# Exhibit B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
TRUCK INSURANCE EXCHANGE,

                               Plaintiff,

               -against-

JONATHAN ROSEN,

                        Defendant.
-------------------------------------------------------------X

Index No. _____

Date Filed: __1/26/2026____

**SUMMONS WITH COMPLAINT**

Plaintiff designates New York County as the place of trial.

The basis of venue is
CPLR §503(a)

**TO THE ABOVE-NAMED DEFENDANT(S):**

**YOU ARE HEREBY SUMMONED** and required to serve upon plaintiffs' attorney an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the complaint. The basis of the venue designated is: (1) the Defendant maintains a place of business in New York County and is a New York-licensed attorney who is domiciled in New York and resides in New York County; and (2) the Defendant engaged in the professional conduct and the acts giving rise to this action within New York County.

Dated: January 26, 2026
      New York, New York

                                     **FORD MARRIN ESPOSITO
WITMEYER & GLESER, L.L.P.**

                                     By: __/s/ John A. Mattoon_____
                                     John A. Mattoon
                                     Wall Street Plaza, 16th Floor
                                     New York, New York 10005
                                     Tel.: (212) 269-4900

1

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 3 of 107

Of Counsel:
Mark G. Sheridan (*pro hac vice application to be submitted*)
Mark A. Deptula (*pro hac vice application to be submitted*)
BATESCAREY LLP
191 North Wacker Drive, Suite 2400
Chicago, IL 60606
Tel.: (312) 762-3100

*Attorneys for Plaintiff Truck Insurance Exchange*

TO:    Jonathan Rosen, Esq.
1133 Broadway, Suite 600
New York, NY 10010

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------X

TRUCK INSURANCE EXCHANGE,

                  Plaintiff,

      -against-

JONATHAN ROSEN,

                  Defendant.

-------------------------------------------------------X

Index No.: _____

**VERIFIED COMPLAINT FOR BREACH OF FIDUCIARY DUTIES, DECLARATORY RELIEF, AND INJUNCTIVE RELIEF**

Plaintiff, Truck Insurance Exchange ("Truck"), by and through its attorneys Ford Marrin Esposito Witmeyer & Gleser, LLP, for its Verified Complaint against Jonathan Rosen ("Rosen"), alleges as follows:

## NATURE OF THE CLAIMS

1. This action was necessitated by the risk that Truck's attorney-client privileged information has been or may soon be disclosed. This risk exists because Truck's former attorney, Rosen, who continues to owe a duty of loyalty and confidentiality to Truck, has now switched sides and has accepted appointment as the party arbitrator for, and is being paid by, Truck's adversaries in a pending arbitration.

2. Specifically, Rosen formerly acted as Truck's lawyer. In that capacity, Truck disclosed to him its confidential views regarding certain contracts of reinsurance that Truck maintained with its reinsurers. After obtaining Truck's confidential insights into how Truck interprets those reinsurance contracts, Rosen provided Truck with legal advice regarding then-pending disputes that Truck had with these reinsurers in connection with those contracts. Today, Truck and those same reinsurers are engaged in an arbitration involving the very same reinsurance contracts and certain of the same issues on which Rosen acted as Truck's lawyer and provided it with legal advice.

3. The Panel in the pending arbitration consists of three members, one arbitrator appointed by each party and a third member – the umpire – who was mutually selected. The reinsurers have hired Rosen and are paying him to be their party-appointed arbitrator. Courts have recognized that a party-appointed arbitrator in this type of three-person panel is an advocate for the party that appointed them.

4. Having previously been entrusted with Truck's confidential views about how the reinsurance contracts operate in connection with disputes with its reinsurers, Rosen is now adverse to Truck in an arbitration on behalf of those very same reinsurers. What is worse, the arbitration involves the exact same contracts and some of the exact same issues upon which Truck disclosed its confidential information to Rosen as its trusted counsel.

5. On January 8, 2026, Truck asked Rosen to resign and to cease any further *ex parte* communications with counsel for the reinsurers in the arbitration regarding the contracts and issues on which he had previously received Truck's confidential information protected by the attorney-client privilege. He refused to resign while denying that he presently recalled confidential information.

6. Rosen's agreement to act as the party-appointed arbitrator for Truck's adversaries in an arbitration involving the same contracts and issues on which he previously provided legal advice to Truck as its lawyer is a breach of his ongoing fiduciary duties of loyalty and confidentiality to Truck. The only remedy to eliminate the actual or potential disclosure of Truck's confidential information protected by the attorney-client privilege is to disqualify Rosen from serving as the arbitrator for Truck's adversaries (the reinsurers) in the pending arbitration.

7. As an additional reason to disqualify Rosen, his actions as Truck's lawyer involving disputes with the same reinsurers, and involving the same reinsurance contracts that

2

are now in dispute in the arbitration, render Rosen a fact witness who may testify in the arbitration. The same person may not act as both an arbitrator and a fact witness in the same proceeding.

<b><u>THE PARTIES, JURISDICTION, AND VENUE</u></b>

8. Truck is an inter-insurance exchange organized and existing under the laws of the State of California with its principal place of business in Los Angeles, California.

9. Rosen is a New York-licensed attorney who resides in New York County.

10. This Court has subject matter jurisdiction over this action pursuant to C.P.L.R. § 301, as this is an action for equitable and injunctive relief arising under New York common law, including claims for breach of fiduciary duty, and because Rosen is domiciled in New York and licensed by the State of New York.

11. This Court has personal jurisdiction over Rosen pursuant to C.P.L.R. § 301 because Rosen resides in New York State and is subject to general jurisdiction here. In the alternative, this Court has personal jurisdiction over Rosen pursuant to C.P.L.R. § 302(a)(1) because he transacted business and engaged in the conduct giving rise to this proceeding within New York State.

12. Venue is proper pursuant to C.P.L.R. § 503(a) because New York County is the county in which a substantial part of the events or omissions giving rise to the claim occurred, Rosen maintains his law office in New York County, because this action concerns Rosen's professional conduct as a New York-licensed attorney in New York County, and upon information belief, Rosen is a resident of New York County.

3

## STATEMENT OF FACTS

### Rosen's Prior Legal Representation of Truck Adverse to Reinsurers

13. Truck and certain London-based reinsurers ("the Reinsurers") entered into a series of contracts in the 1970s in which the Reinsurers promised to reinsure Truck in connection with all general liability insurance policies that Truck issued to policyholders during that time ("Treaties").

14. Pursuant to those Treaties, the Reinsurers agreed that, if Truck ever had to pay out on those policies, the Reinsurers would, subject to the terms of the Treaties, indemnify Truck for some or all of those payments.

15. The Treaties contained a provision requiring arbitration of disputes arising thereunder.

16. By 2003, Truck had made payments under direct policies of insurance that Truck issued to two policyholders known as Temco and Ameron. Truck submitted reinsurance billings to the Reinsurers under the Treaties. The Reinsurers objected to Truck's billings.

17. In response to the Reinsurers' objections, Truck retained Rosen in 2003 as its lawyer to analyze whether Truck had correctly billed the Reinsurers under the Treaties in connection with the Temco and Ameron claims.

18. Within the protections of the attorney-client privilege, Truck disclosed to Rosen its confidential interpretation of the Treaties, including Truck's view of the strengths and weaknesses of its position vis-a-vis the Reinsurers. Truck and Rosen also had multiple discussions over these issues.

19. From his office in New York City, Rosen provided his advice to Truck regarding how the Treaties should be interpreted, whether Truck's billings under the Treaties were correct,

4

and the proper manner in which to recover from the Reinsurers the amounts due on the outstanding Temco and Ameron billings.

20. Continuing to act as Truck's attorney, Rosen undertook extensive negotiations with the Reinsurers, including taking at least one trip to London to conduct direct face-to-face negotiations with the Reinsurers. During this time, Rosen authored several letters to the Reinsurers, in which Rosen identified himself as "COUNSEL FOR … TRUCK INSURANCE EXCHANGE."

21. By the end of 2003, Rosen succeeded in negotiating settlements of both the Temco and Ameron claims on behalf of Truck.

**Rosen's Current Appointment By Reinsurers Adverse to Truck**

22. Although the disputes over the Temco and Ameron accounts were resolved, the Treaties remained in place, and Truck continued to receive claims from other policyholders that triggered coverage under policies that Truck had issued back in the 1970s and that were reinsured by the Treaties. Accordingly, Truck continued to submit reinsurance billings to the Reinsurers under those Treaties on a continuing basis over the following decades.

23. A new dispute between Truck and the Reinsurers emerged in late 2023 and early 2024 arising out of payments that Truck had made and continues to make to its policyholder Kaiser Cement ("Kaiser"). Specifically, Truck had issued policies to Kaiser in the 1970s, and Kaiser asserted that these policies covered liabilities arising from claims asserted by individuals alleging that asbestos-containing products manufactured and/or distributed by Kaiser caused bodily injuries. Truck defended and indemnified Kaiser in connection with these underlying asbestos bodily injury claims.

5

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 9 of 107

24. Because these insurance policies were reinsured by the Treaties, Truck submitted reinsurance billings to the Reinsurers under the Treaties to recover a portion of these payments.

25. The Reinsurers objected to Truck's Kaiser billings. The Reinsurers' objections included at least one of the objections that the Reinsurers had raised back in 2003 on the Temco and Ameron claims, and upon which Truck shared its confidential information with Rosen and obtained Rosen's legal advice.

26. In May 2024, the Reinsurers demanded arbitration of the dispute over the Kaiser billings pursuant to the arbitration provision in the Treaties.

27. The arbitration provision provided for a tripartite panel consisting of one arbitrator appointed by the Reinsurers and one arbitrator appointed by Truck, both of whom would be paid solely by the party that appointed them. The third arbitrator – the umpire – would be neutrally selected and paid equally by both parties.

28. In this type of three-person panel in which two panelists are appointed by the parties, those party-appointed arbitrators – as opposed to the neutrally-selected umpire – are expected to be advocates for the respective parties that appointed them.

29. The Reinsurers appointed Rosen as their arbitrator.

30. At the time the Reinsurers appointed Rosen as their arbitrator, the individuals at Truck who had retained Rosen and to whom Rosen reported back in 2003 were no longer with Truck. Accordingly, the individuals at Truck who were responsible for the disputed Kaiser billings and pending arbitration did not know that Rosen had been Truck's attorney.

31. Rosen did not disclose during the arbitration that he had acted as Truck's attorney. Nor did Rosen disclose that, because of this past legal representation of Truck, he received

6

Truck's confidential information and had extensive conversations with Truck regarding the same Treaties and certain issues that are in dispute in the arbitration.

32.     Before the umpire was selected, Truck and the Reinsurers were involved in litigation in California regarding the scope of the arbitration. The court ruled that disputes over a contract other than the Treaties, *i.e.*, a certain Memorandum of Understanding between Truck and the Reinsurers, should be addressed in the arbitration.

### Truck's Discovery of Rosen's Side-Switching and His Refusal to Resign

33.     In late 2025, Truck reviewed its 2003 files relating to the Temco and Ameron reinsurance claims. It was then that Truck discovered that Rosen -- its adversary's arbitrator -- had been Truck's own lawyer, entrusted with Truck's confidential information concerning the Treaties and certain issues in dispute in the pending arbitration.

34.     On January 8, 2026, Truck wrote to Rosen reminding him of his continuing fiduciary duties to his former client, Truck, and requesting that he not use confidential information obtained in his role as Truck's lawyer in a manner adverse to Truck in the pending arbitration. Truck demanded that Rosen resign from the Panel. Truck also demanded that Rosen cease communicating with Reinsurers' counsel on an *ex parte* basis concerning the topics on which he and Truck shared confidential and privileged information – *i.e.*, the interpretation of the Treaties.

35.     Rosen refused to resign from the Panel, while denying that he retained any confidential information belonging to Truck. He also did not agree to cease communicating with Reinsurers' counsel on an *ex parte* basis regarding the topics on which Rosen obtained Truck's confidential information.

7

## COUNT ONE
### (Breach of Fiduciary Duties)

36.     Truck repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

37.     As Truck's former attorney, Rosen owes Truck continuing fiduciary duties of loyalty and confidentiality.

38.     These duties include: (a) not advocating on behalf of a client who is adverse to Truck on matters substantially similar to the matters in which Rosen formerly represented Truck (Rule 1.9(a) of the New York Rules of Professional Conduct); and (b) maintaining the confidences that Truck entrusted to him when he acted as Truck's lawyer (Rule 1.9(c) of the New York Rules of Professional Conduct).

39.     Rosen's agreement to serve as Reinsurers' appointed arbitrator in the pending arbitration is a breach of the continuing fiduciary duties he owes to his former client, Truck.

40.     The pending arbitration in which he is acting on behalf of the Reinsurers involves the same Treaties and certain of the same issues involved in Rosen's prior representation of Truck.

41.     Additionally, the confidences that Truck entrusted to Rosen as its lawyer included Truck's views on how to correctly bill the Reinsurers under the Treaties and the strengths and weaknesses of Truck's interpretation of the Treaties.

42.     Upon information and belief, Rosen has had and may continue to have *ex parte* communications with counsel for Reinsurers about the interpretation of the Treaties.

43.     Rosen's continued presence on the arbitration panel will irreparably harm Truck. Unless Rosen is removed from the panel and replaced by a newly-appointed arbitrator who is not

8

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 12 of 107

privy to Truck's confidential information, Truck will face ongoing risks that its confidential information will be used against it.

## COUNT TWO
### (Declaratory Relief –
### Disqualifying Rosen From Acting As Reinsurers' Arbitrator Adverse To Truck)

44. Truck repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

45. For all the reasons set forth above, Truck is entitled to a declaration that Rosen breached his ongoing fiduciary duties to Truck and that Rosen must step down from the arbitration panel.

46. As an additional reason entitling Truck to declaratory relief, Rosen, as an attorney licensed in the State of New York, has a duty not to undermine the administration of justice or the integrity of the arbitration process.

47. Rosen's actions in his capacity as Truck's former attorney has rendered Rosen a potential fact witness in the arbitration. First, Truck may seek to rely upon the advice Rosen provided to Truck to support its position in the arbitration. Additionally, Truck may seek to elicit testimony from Rosen with respect to the various statements the Reinsurers made to him when he was Truck's attorney regarding the Treaties and issues in dispute in the arbitration. Truck may also seek testimony from Rosen about his communications with Reinsurers' counsel regarding the subject matter of the various issues discussed with them.

48. If Rosen acts as both a fact witness and an arbitrator in the same proceeding, he would undermine the administration of justice and the integrity of the arbitration process.

9

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 13 of 107

## COUNT THREE
### (Injunctive Relief –
### Enjoining Rosen From Acting As Reinsurers' Arbitrator Adverse To Truck)

49. Truck repeats and realleges the allegations set forth in the paragraphs above as though fully set forth herein.

50. Based on the allegations set forth herein, Truck is entitled to injunctive relief.

51. Accordingly, Rosen should be enjoined by order and judgment of this Court from continuing to act as party arbitrator for Truck's adversaries, the Reinsurers, in the arbitration.

**WHEREFORE**, Truck respectfully requests that judgment be entered in favor of Truck and against Rosen as follows:

a. Enter judgment for Truck finding that Rosen breached, and continues to breach, his fiduciary duties to Truck by serving as the arbitrator for Truck's adversaries, the Reinsurers, in the arbitration;

b. Enter a declaratory judgment disqualifying Rosen from acting as party arbitrator for the Reinsurers in the arbitration;

c. Enjoin Rosen from acting as party arbitrator for the Reinsurers in the arbitration;

d. Enter an injunction barring Rosen from discussing with Reinsurers or their counsel any topics on which Rosen received Truck's confidential information when he acted as Truck's attorney, including but not limited to terms and application of the Treaties;

e. Award Truck its attorneys' fees and costs incurred in this action, to the extent permitted by law; and

f. Award such other and further relief as the Court deems appropriate.

Dated: January 21, 2026
      New York, New York

                                             **FORD MARRIN ESPOSITO WITMEYER & GLESER, L.L.P.**

                                             By: __/s/ John A. Mattoon_____
                                             John A. Mattoon
                                             Wall Street Plaza, 16th Floor
                                             New York, New York 10005
                                             Tel.: (212) 269-4900

10

Of Counsel:
Mark G. Sheridan (*pro hac vice application to be submitted*)
Mark A. Deptula (*pro hac vice application to be submitted*)
BATESCAREY LLP
191 North Wacker Drive, Suite 2400
Chicago, IL 60606
Tel.: (312) 762-3100

*Attorneys for Plaintiff Truck Insurance Exchange*

11

## **VERIFICATION**

I, **Kathleen Chapman**, am Director of Reinsurance for Farmers Group, Inc., which is the attorney-in-fact for Plaintiff Truck Insurance Exchange, an inter-insurance exchange established under the laws of the State of California. I have read the foregoing **Verified Complaint** and know the contents thereof. The same is true to my own knowledge, except as to the matters therein stated to be alleged on information and belief, and as to those matters, I believe them to be true.

I affirm this 21st day of January, 2026, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

By: _Kathleen Chapman_
Kathleen Chapman

At IAS Part __ of the Supreme Court of the State of New York, held in and for the County of New York, at the courthouse located at 60 Centre Street, New York, New York, on _____, 2026.

PRESENT:

      HON. _____
               Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X
TRUCK INSURANCE EXCHANGE,

               Plaintiff,

      -against-

JONATHAN ROSEN,

               Defendant.
-------------------------------------------------------------X

Index No. __650475/2026__

**ORDER TO SHOW CAUSE**

Upon the reading and filing of the Affirmation of Mark G. Sheridan, dated January 22, 2026, the Affirmation of Kathy Chapman, dated January 21, 2026, the Affirmation of John A. Mattoon, dated January 26, 2026,  and upon all papers and proceedings herein,

**ORDERED**, pursuant to CPLR § 6313(a), that pending the hearing and determination of this Order to Show Cause, Defendant Jonathan Rosen, Esq. ("Rosen") is temporarily restrained and enjoined from communicating with any person, including Plaintiff's adversaries in an underlying arbitration captioned *In the Matter of the Arbitration Between Certain Underwriters at Lloyd's, London, et al. and Truck Insurance Exchange* (the "Arbitration") or their counsel on any topics on which Rosen received confidential information from Plaintiff Truck Insurance Exchange ("Truck") when he acted as Truck's attorney, including but not limited to the terms and application

1

of the treaties at issue in the Arbitration, it appearing that immediate and irreparable injury will result absent such temporary relief; and it is further

**ORDERED**, that Plaintiff shall post an undertaking, if any, in the amount of $_____ pursuant to CPLR § 6312(b); and further

**LET** Defendant Jonathan Rosen, Esq., or his attorney, show cause before this Court at Part _____, Room _____ of the New York County Courthouse, located at 60 Centre Street, New York, New York on the \_\_\_\_ day of _____, 2026 at \_\_\_\_ a.m./p.m., or as soon thereafter as counsel can be heard, upon a showing of a likelihood of success on the merits, irreparable harm, and a balance of equities tipping in Plaintiff's favor, why an order should not be issued granting:

A.  a confirmation of the temporary restraining order and an order preliminarily enjoining Defendant from communicating with any person, including Plaintiff's adversaries in the Arbitration or their counsel, regarding any topics on which Rosen received Truck's confidential information when he acted as Truck's attorney, including but not limited to the terms and application of the Treaties; and

B.  a preliminary injunction, and after a hearing on the merits, a permanent injunction, restraining and enjoining Defendant from serving as a party-appointed arbitrator in the Arbitration on behalf of Plaintiff's adversaries where such service would violate Defendant's continuing duties of confidentiality and loyalty arising from his prior representation of Plaintiff; and

C.  awarding such other and further relief as the Court deems appropriate; and it is further

**ORDERED** that a copy of this Order to Show Cause, along with the papers on which it is based, as well as the summons and complaint herein, shall be served on Defendant on or before

2

the _____ day of _____, 2026, by delivering a copy of such papers by email and overnight delivery service to 1133 Broadway, Suite 600, New York, NY 10010, such manner of service having been authorized by the Court pursuant to CPLR 308(5), and such service being deemed good and sufficient; and it is further

**ORDERED** that opposition papers, if any, shall be served and filed by NYSCEF on Plaintiff's counsel, Ford Marrin Esposito Witmeyer & Gleser, LLP, 88 Pine Street, New York, New York 10005, on or before the _____ day of _____, 2026, which shall be deemed good and sufficient service thereof; and it is further

**ORDERED**, that all papers shall be filed and served electronically via NYSCEF, except as otherwise expressly authorized herein.

Signed this _____ day of _____ 2026 at New York, New York.

ENTER:

_____

J.S.C.

3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
TRUCK INSURANCE EXCHANGE,

                          Plaintiff,

                -against-

JONATHAN ROSEN,

                        Defendant.
-------------------------------------------------------------------X

Index No.: 650475/2026

**AFFIRMATION OF
JOHN A. MATTOON**

JOHN A. MATTOON, an attorney duly licensed to practice before the Courts of the State of New York, hereby affirms the following to be true under penalty of perjury:

1.      I am a partner with the law firm of Ford Marrin Esposito Witmeyer & Gleser, LLP, attorneys for Plaintiff Truck Insurance Exchange ("Truck"), herein, and as such, am fully familiar with the facts and circumstances of the above matter.

2.      I make this Affirmation pursuant to CPLR 2217(b) and Uniform Rule 202.7(f) & 202.7(g) in support of Truck's application for an Order to Show Cause and Temporary Restraining Order.

3.      **Uniform Rule 202.7(g):** Prior to the commencement of this action and the filing of this application, co-counsel for Truck made a good faith effort to resolve the issues raised herein without judicial intervention. Specifically, on January 8, 2026, Truck's counsel in the Arbitration Mark G. Sheridan (*pro hac vice* application forthcoming) contacted Defendant by letter sent via email and federal express to demand that Defendant cease and desist from disclosing confidential information and recuse himself from serving as a party-appointed arbitrator in the underlying Arbitration. Mr. Rosen declined this recusal request.

1

4.    **Uniform Rule 202.7(f)**: On Monday January 26, 2026, at 9:43 a.m., I notified Defendant of this application via e-mail. I informed Defendant that Plaintiff would be moving *ex parte* for a Temporary Restraining Order the following day, and provided Defendant with a copy of the summons with complaint and draft application papers. I further advised Defendant that I would provide him the name of the assigned Justice once that information became available. I then spoke to Defendant via telephone at 10:46 a.m. also on January 26th. Defendant confirmed that he had received an email regarding this matter and so was aware of its existence. Defendant advised that he would be retaining counsel, but did not confirm whether he would be appearing to contest the Temporary Restraining Order. I emailed Defendant again on January 26, 2026 at 2:13 p.m. to advise that Plaintiff would present its Temporary Restraining Order at the New York County Supreme Court on **Wednesday, January 28, 2026 at 11:00 am**. Annexed hereto as <u>Exhibit A</u> is a true and correct copy of the foregoing email correspondence.

5.    **CPLR 2217(b)**: No prior application for the relief sought herein, or for similar relief, has been made to this or any other court or judge.

I affirm, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

Dated: New York, New York
         January 26, 2026

                                                                      /s/ John A. Mattoon_____
                                                                      JOHN A. MATTOON

2

## ATTORNEY CERTIFICATION OF WORD COUNT

I, John A. Mattoon, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that the above document complies with the word count limitation set forth in §202.8-b(a) of the Uniform Civil Rules for the Supreme Court (22 NYCRR 202.8-b) because it contains 441 words, excluding the parts of the document that are exempted by the rule. In preparing this Certification, I have relied on the word count of the word-processing system (Microsoft Word) used to prepare the referenced document.

Dated: January 26, 2026
      New York, New York

By: __/s/ John A. Mattoon_____

3

# EX. A

| | |
|---|---|
| **From:** | John A. Mattoon |
| **To:** | "jonrosen55@aol.com" |
| **Cc:** | "Sheridan, Mark G."; "Deptula, Mark A." |
| **Subject:** | RE: Truck Insurance Exchange v Rosen - Order to Show Cause - UPDATE |
| **Date:** | Monday, January 26, 2026 2:12:49 PM |

Mr. Rosen:

It appears today's court closure due to the weather has delayed the assignment of an Index Number for this matter. Accordingly, we are rescheduling the presentation of the TRO to **Wednesday, January 28th at 11:00 AM**, contingent upon the court's administrative processing.

As you indicated you are retaining counsel, please have them contact me if they intend to appear to contest the TRO.

Regards,

John


John A. Mattoon, Jr.
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 16th Floor
New York, New York 10005
T: (212) 269-4900

www.fordmarrin.com

CONFIDENTIALITY NOTICE: This e-mail is sent by a law firm, may contain confidential or privileged information and is authorized to be read only by the intended recipient(s). Use of it by anyone other than an intended recipient is unlawful. Whether or not you are mistakenly named as an addressee, if you receive this e-mail by mistake, interception or otherwise, and you are not the intended recipient, you have no authority to read or disseminate this e-mail or any of its attachments; therefore, please immediately delete it and any attachments, and then notify the sender by e-mail or telephone at 212-269-4900.

**From:** John A. Mattoon
**Sent:** Monday, January 26, 2026 9:43 AM
**To:** 'jonrosen55@aol.com' <jonrosen55@aol.com>
**Cc:** 'Sheridan, Mark G.' <MSheridan@BatesCarey.com>; Deptula, Mark A. <mdeptula@BatesCarey.com>
**Subject:** Truck Insurance Exchange v Rosen - Order to Show Cause

Dear Mr. Rosen:

Our firm represents Plaintiff Truck Insurance Exchange ("Truck").

Please be advised that, pursuant to Uniform Rule 202.7(f), Truck intends to file an application for an

Order to Show Cause and a Temporary Restraining Order against you in the Supreme Court of the State of New York, County of New York.

The application seeks, among other relief, to enjoin you from participating as a party arbitrator in the underlying Arbitration with Lloyd's and from communicating with Lloyd's counsel regarding the treaties at issue in the Arbitration.

Attached please find copies of the following:
- Summons and Verified Complaint (filed but not yet assigned);
- Proposed Order to Show Cause with Temporary Restraining Order (to be filed);
- Supporting Affirmations with Exhibits and Memorandum of Law (to be filed).

The proposed appearance for the TRO as set forth in the application is <u>11:00 AM</u> on Tuesday, <u>January 27, 2026</u> at New York County Supreme Court, 60 Centre Street, New York, NY 10007.

Please note that we have not yet been assigned a Justice or a specific courtroom. I will follow up via email with that information as soon as it becomes available, but otherwise I will plan to appear on Tuesday at the ex parte office if a Justice has not yet been assigned.

I ask that you please acknowledge receipt of this email, and feel free to contact me at the telephone number below if you would like to discuss.

Best regards,

John A. Mattoon, Jr.
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 16th Floor
New York, New York 10005
T: (212) 269-4900
M: (917) 450-2768

www.fordmarrin.com

CONFIDENTIALITY NOTICE: This e-mail is sent by a law firm, may contain confidential or privileged information and is authorized to be read only by the intended recipient(s). Use of it by anyone other than an intended recipient is unlawful. Whether or not you are mistakenly named as an addressee, if you receive this e-mail by mistake, interception or otherwise, and you are not the intended recipient, you have no authority to read or disseminate this e-mail or any of its attachments; therefore, please immediately delete it and any attachments, and then notify the sender by e-mail or telephone at 212-269-4900.

| From: | John A. Mattoon |
|---|---|
| To: | "jonrosen55@aol.com" |
| Cc: | "Sheridan, Mark G."; Deptula, Mark A. |
| Subject: | Truck Insurance Exchange v Rosen - Order to Show Cause |
| Date: | Monday, January 26, 2026 9:43:16 AM |
| Attachments: | Summons and Verified Complaint - Truck v Rosen - Unassigned.pdf |
| | Truck Proposed OTSC  -  Injunction.pdf |
| | Sheridan Aff with Exhibits - SEAL REQUESTED.pdf |
| | Chapman Aff with Exhibits.pdf |
| | Memorandum In Support of OTSC - SEAL REQUESTED.pdf |

Dear Mr. Rosen:

Our firm represents Plaintiff Truck Insurance Exchange ("Truck").

Please be advised that, pursuant to Uniform Rule 202.7(f), Truck intends to file an application for an Order to Show Cause and a Temporary Restraining Order against you in the Supreme Court of the State of New York, County of New York.

The application seeks, among other relief, to enjoin you from participating as a party arbitrator in the underlying Arbitration with Lloyd's and from communicating with Lloyd's counsel regarding the treaties at issue in the Arbitration.

Attached please find copies of the following:
- Summons and Verified Complaint (filed but not yet assigned);
- Proposed Order to Show Cause with Temporary Restraining Order (to be filed);
- Supporting Affirmations with Exhibits and Memorandum of Law (to be filed).

The proposed appearance for the TRO as set forth in the application is 11:00 AM on Tuesday, January 27, 2026 at New York County Supreme Court, 60 Centre Street, New York, NY 10007.

Please note that we have not yet been assigned a Justice or a specific courtroom. I will follow up via email with that information as soon as it becomes available, but otherwise I will plan to appear on Tuesday at the ex parte office if a Justice has not yet been assigned.

I ask that you please acknowledge receipt of this email, and feel free to contact me at the telephone number below if you would like to discuss.

Best regards,

John A. Mattoon, Jr.
Ford Marrin Esposito Witmeyer & Gleser, L.L.P.
Wall Street Plaza, 16th Floor
New York, New York 10005
T: (212) 269-4900
M: (917) 450-2768

www.fordmarrin.com
CONFIDENTIALITY NOTICE: This e-mail is sent by a law firm, may contain confidential or

Case 1:26-cv-01709-LAK Document 1-2 Filed 03/02/26 Page 26 of 107

privileged information and is authorized to be read only by the intended recipient(s). Use of it by anyone other than an intended recipient is unlawful. Whether or not you are mistakenly named as an addressee, if you receive this e-mail by mistake, interception or otherwise, and you are not the intended recipient, you have no authority to read or disseminate this e-mail or any of its attachments; therefore, please immediately delete it and any attachments, and then notify the sender by e-mail or telephone at 212-269-4900.

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 27 of 107

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------X
TRUCK INSURANCE EXCHANGE,

                Plaintiff,

         -against-

JONATHAN ROSEN,

                Defendant.
--------------------------------------------------------X

Index No.: 650475/2026

## AFFIRMATION OF KATHLEEN CHAPMAN

KATHLEEN CHAPMAN, being duly affirmed, affirms under penalties of perjury as follows:

1.     I am over eighteen (18) years of age and have firsthand knowledge of the facts and matters recited herein.

2.     I submit this Affirmation in Support of Truck's Application by Order to Show Cause for a Temporary Restraining Order and a Preliminary Injunction.

3.     I am employed by Farmers Group, Inc. as its Director of Reinsurance. In the role, I have certain responsibilities for overseeing reinsurance-related matters for Truck Insurance Exchange, an inter-insurance exchange established under the laws of State of California ("Truck"). Farmers Group, Inc. is the attorney-in-fact for Truck.

4.     I have personally reviewed Truck's records relating to the matters set forth in this Affirmation. I make the statements in this Affirmation based on my review of those files and on my own personal knowledge.

5. Attached hereto as Exhibit 1 is a true and correct copy of a certain Contract of Reinsurance. This Contract was one of several Contracts of Reinsurance ("the Treaties") that Truck executed with certain London-market reinsurers ("the Reinsurers").

6. In December 2002, Truck retained Jonathan Rosen ("Rosen") as its attorney to provide legal advice to Truck regarding the strengths and weaknesses of certain disputes Truck had with the Reinsurers under the Treaties. These disputes involved Truck's attempt to collect indemnity from the Reinsurers under the Treaties in connection with payments that Truck made to two of its policyholders (Temco and Ameron).

7. Truck's documentation shows that Truck provided Rosen with its entire claim and underwriting files in connection with the Temco claim. These files contained all of Truck's information, including its internal analysis, relating to that claim. Truck also sent Rosen certain of its files relating to the Treaties.

8. Truck's files contain documents referencing multiple conversations that attorney Rosen had with various Truck employees, including Janet Brooks and Steven Moccardini, about Truck's disputes with the Reinsurers over the interpretation of the Treaties. True and correct copies of certain of these documents (in redacted form to protect Truck's attorney-client privilege) are collected in Exhibit 2 attached hereto.

9. Attached hereto as Exhibit 3 is a true and correct copy (in redacted format to protect Truck's attorney-client privilege) of an email that Rosen, as Truck's attorney, Rosen, sent to Truck's Ms. Brooks and Mr. Moccardini on March 19, 2003, in which he provided his legal opinion and evaluation of Truck's position vis-à-vis the Reinsurers.

2

10. Attached hereto as Exhibit 4 is a true and correct copy of Rosen's April 23, 2003 letter to Equitas (agent for the Reinsurers).

11. In late 2023 or early 2024, a dispute arose between Truck and the Reinsurers in connection with payments that Truck made to its policyholder, Kaiser Cement. The Reinsurers demanded arbitration of this dispute in May 2024.

12. I have principal responsibility within Truck for overseeing this arbitration.

13. The Reinsurers hired attorney Rosen as their arbitrator on the arbitration panel. At the time the Reinsurers hired Rosen, the individuals at Truck to whom Rosen had reported back in 2003, including Ms. Brooks and Mr. Moccardini, were no longer employed by Truck. At the time the Reinsurers hired Rosen, I was unaware that Rosen had previously acted as Truck's attorney in the past in connection with the same Treaties that are in dispute in the arbitration.

14. Truck is paying all the costs of its appointed arbitrator and one-half of the costs of the umpire. Truck is not paying for Rosen to act as the Reinsurers' arbitrator.

15. In response to certain document requests that the Reinsurers served in the arbitration, I directed my staff to pull certain old claim files that involved billings to the same Treaties that are now in dispute in the arbitration. In late 2025, I reviewed the 2003 claim files for the Temco and Ameron claims. In those files, I discovered documents, including but not limited to Exhibits 2-4 referenced above, showing that Rosen acted as Truck's attorney in connection with disputes that Truck had with the Reinsurers on the Treaties that are currently in dispute in the arbitration.

3

16.    I affirm this 21st day of January, 2026, under penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, that the foregoing is true, except as to matters alleged on information and belief and as to those matters I believe to be true, and I understand that this document may be filed in an action or proceeding in a court of law.

KATHLEEN CHAPMAN

8897195

4

**ATTORNEY CERTIFICATION OF WORD COUNT**

I, John A. Mattoon, an attorney duly admitted to practice law before the courts of the State of New York, hereby certify that the above document complies with the word count limitation set forth in §202.8-b(a) of the Uniform Civil Rules for the Supreme Court (22 NYCRR 202.8-b) because it contains 786 words, excluding the parts of the document that are exempted by the rule. In preparing this Certification, I have relied on the word count of the word-processing system (Microsoft Word) used to prepare the referenced document.

Dated:  January 26, 2026
    New York, New York

By:   /s/ John A. Mattoon _____

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 32 of 107

# EX. 1

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 33 of 107

C.N. 13544

### CONTRACT OF REINSURANCE

issued to

**TRUCK INSURANCE EXCHANGE**
Los Angeles, California
(hereinafter called the 'Reassured')

by

LLoyds
CERTAIN INSURANCE COMPANIES
(hereinafter called the 'Reinsurers')

covering the excess liability which may accrue to the Reassured as the result of accidents, disasters, casualties or occurrences during the currency of this Contract under policies, contracts or binders of insurance or reinsurance covering the following types of business:

1. Automobile and Cargo and/or General Public Liability including Bailees Customers coverage but excluding liability coverages in the Sentinel Package Policy for farmers and ranchers.

2. (a) Workmen's Compensation Act and/or Employers' Liability Acts and/or Admiralty Law and United States Longshoremen's and Harbour Workers' Compensation Act, (in accordance with the provisions of such laws and/or acts from time to time in force), and/or Common Law, under which an employee may recover against the employer, as a result of any accident or accidents which may occur anywhere within the limits of the United States of America and/or Canada.

   (b) United States Compensation Acts (as set forth herein) as a result of any accident or accidents which may occur in the Republic of Mexico.

   (c) The (so called) 'Voluntary Compensation Endorsement' (if any) attaching to the Reassured's Employers' Liability Policies.

The coverage hereunder in respect of General Public Liability (Personal Injury) is subject always to the following special conditions:—

This Contract shall not apply in respect of any policy or contract issued or reinsured by the Reassured and covering the following occupations or employments except when such occupations or employments form an incidental and minor part of the Insured's operations covered hereunder.

JOHN F. SULLIVAN Co.        Agents

TREATY 030

PROHIBITED LIST (Personal Injury only) GENERAL LIABILITY SECTION and WORKMEN'S COMPENSATION

1. Ocean Marine (Cargo and Hull) Insurance and/or all forms of legal liability arising out of the operation or navigation of ships or vessels other than:

   (a) Yachts, small pleasure craft, sports fishing vessels.

   (b) Off shore oil rigs.

   (c) Legal liability of ship owners to passengers and/or crews of vessels owned or operated by them.

   (d) Ship Repairers Liability.

   (e) Stevedores Liability.

   (f) Legal Liability of or to Harbour Authorities.

   (g) Vessels operating exclusively in inland and/or coastal waters where legal liability on such vessels is incidental to the coverage provided either under a general liability policy or under a comprehensive form of policy.

2. Railroads.

3. Risks in connection with Aerodromes, Airships, Aeroplanes and/or Aviation.

4. Nuclear Incident Exclusion Clause - Liability - Reinsurance Nuclear Incident Exclusion Clause - Physical Damage - Reinsurance as attached hereto.

Nevertheless, in the event of the Reassured being interested on such a prohibited risk without its knowledge, either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise, this Contract shall attach in respect of such prohibited risk (other than 4 above) but only until discovery by the Underwriting Department of the Reassured and for not exceeding thirty days thereafter.

With respect to item 4 above, this Contract shall not exclude any unknown nuclear exposure which, for that reason, is not recoverable from the nuclear pools.

In respect of Section (2) of the Preamble this Contract does not cover in respect of any policy issued or reinsured by the Reassured to cover the following occupations or employment, except when such occupations or employments are incidental to and form a minor part of the usual occupation or employment of the Assured.

-2-

JOHN F. SULLIVAN CO.

TREATY 031

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 35 of 107

1. Working and navigation of any vessel, other than light craft on inland waterways and dredging.

2. Manufacture, Storage, filling, breaking down of

   (a) Fireworks, Ammunition, Fuse Cartridges, Powder, Nitroglycerine or any explosive.

   (b) Gases and/or air under pressure in containers, but this exclusion shall not apply to small Liquefied Petroleum Gas distributors.

3. Coal and other mines, except open cut.

4. Aviation risks involving flying risks.

5. Excess Insurance and/or Reinsurance, nevertheless liability accepted by way of pro rata reinsurance from the Mid-Century Insurance Company in respect of Excess of Loss Insurance shall not be excluded herefrom.

6. Atomic Energy Commission projects.

Nevertheless, in the event of the Reassured being interested on such a prohibited risk without their knowledge (excepting Exclusion No. 6 - 'Atomic Energy Commission projects'), either by an existing Insured extending its operations or by an inadvertent acceptance by an Agent or otherwise, this Contract shall attach in respect of such prohibited risk but only until discovery by the Underwriting Department of the Reassured and for not exceeding thirty days thereafter.

## ARTICLE 1

This Contract applies only to that portion of any Insurance or Reinsurance which the Reassured retains net for its own account, and in calculating the amount of any loss hereunder and also in computing the amount or amounts in excess of which this Contract attaches, only loss or losses in respect of that portion of any Insurance or Reinsurance which the Reassured retains net for its own account shall be included. The amount of the Reinsurers' liability hereunder in respect of any loss or losses shall not be increased by reason of the inability of the Reassured to collect from any other Underwriters, whether specific or general, any amounts which may have become due from them whether such inability arises from the insolvency of such other Underwriters or otherwise.

## ARTICLE 2

This Contract shall

   (a) Commence at Midnight the 30th June, 1968 and shall remain in force until Midnight the 30th June, 1969.

-3-

JOHN F. SULLIVAN CO.

TREATY 032

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 36 of 107

(b)  be automatically renewed for further periods of 12 months.

(c)  cover only in respect of loss resulting from occurrences or accidents sustained during the currency hereof.

This Contract may be cancelled at any time at the request of the Reassured or by the Reinsurers or their representatives by giving ninety (90) days prior notice of such cancellation. Reinsurers shall not be liable for losses occurring subsequent to the date on which the cancellation becomes effective, except as regards occupational or other disease referred to in Article 3, in which case Reinsurers shall not be liable for losses occurring subsequent to the expiry or anniversary dates of the policies next succeeding the effective date of cancellation, whichever shall first occur.

### ARTICLE 3

(A)  Except as respects Third Party Liability policies which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on account of loss by any one occurrence and/or accident an amount in excess of U.S. $75,000 ultimate net loss in any one occurrence and/or accident, and the amount recoverable hereunder shall be the amount in excess of such U.S. $75,000 but such amount recoverable shall not exceed a further U.S. $1,925,000 hereunder in respect of any one occurrence and/or accident.

(B)  With respect to Third Party Liability policies, excluding Trucking business, which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on its net retained lines, an amount in excess of U.S. $75,000 of losses in the aggregate under each policy during each policy year and the amount recoverable hereunder shall be the amount in excess of such U.S. $75,000 aggregate ultimate net loss sustained by the Reassured in respect of each policy during each policy year, but such amount recoverable shall not exceed a further U.S. $1,925,000 hereunder in the aggregate under each policy during each policy year.

The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

-4-

JOHN F. SULLIVAN CO.

TREATY 033

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 37 of 107

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Assured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

With respect to disease as above mentioned and only in such respect in the event of the gross earned annual compensation premium for full cover including occupational disease in respect of any one original Assured exceeding $75,000 then the liability of Reinsurers hereon shall be for $1,925,000 in excess of an amount of ultimate net loss equal to such gross earned annual compensation premium, (instead of for $1,925,000 in excess of $75,000 ultimate net loss) but not exceeding $100,000.

It is warranted that the first $75,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

## ARTICLE A

The term 'ultimate net loss' mentioned in the foregoing paragraph, shall mean the sum actually paid by the Reassured in settlement of losses or liability after making deductions for all recoveries, all salvages and all claims upon other Insurances or Reinsurances, whether recovered or not and shall include all adjustment expenses arising from the settlement of claims (other than the salaries of employees and office expenses of the Reassured) but shall exclude legal costs except as provided for in the following paragraph.

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $75,000 no legal costs shall be payable by the Reinsurers hereon.

For the purposes of this Contract interest on any judgment shall be regarded as a cost of such action or claim and shall be apportioned in accordance with the preceding paragraph.

-5-

JOHN F. SULLIVAN CO.

TREATY 034

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 38 of 107

The term 'expenses' as used herein insofar as compensation business is concerned shall include Reinsurers' share of the salaries of the Reassured's qualified claims officials according to the time occupied in actually assessing the claim in question in the proportion that Reinsurers' share of the claim as finally settled bears to the total sum payable. The said term shall exclude internal office expenses of the Reassured and any part of salaries chargeable to internal office work.

Notwithstanding anything contained herein to the contrary, it is agreed that where the Reassured issues policies with aggregate limits of liability in respect of miscellaneous general liability business, excluding Trucking business, all legal costs incurred in the defense of claims shall be considered part of the loss both as respects the deductible and the limit of liability hereon.

All salvages, recoveries or payments recovered or received subsequent to a loss settlement under this Agreement shall be applied as if recovered or received prior to the aforesaid settlement and all necessary adjustments shall be made by the parties hereto.

### ARTICLE 5

The Reassured shall notify the Reinsurers of any claim or claims advised which might give rise to a claim under this Contract as soon as the Reassured have reason to believe that the Reinsurers will be financially interested in such claim or claims. The Reassured shall furnish the Reinsurers with all available information respecting such claim or claims. The inadvertent failure or omission of the Reassured to give such notice shall not be held to prejudice its rights of recovery hereunder.

So far as practicable having regard to mail delays and time of transit:-

Whenever the claim or claims arising out of any one occurrence and/or accident appear likely to give rise to a claim under this Contract the course to be adopted by the Reassured in connection with the defense of or settlement of such claim or claims shall be determined by agreement between the Reassured and the Reinsurers or their representatives and the Reassured will not without the consent of the Reinsurers or their representatives litigate such claim or claims. In case of difference of opinion the parties agree to follow the advice of a referee to be mutually agreed.

At the end of twenty-four months after termination of this Contract the Reinsurers shall have the right, if they so desire, to commute any losses still outstanding. Any outstanding claims shall be appraised by an expert Appraiser nominated by mutual consent of the Reassured and the Reinsurers and his decision shall be final.

Loss or advance on account of loss, if any, hereunder shall be payable to said Reassured in Los Angeles, California, United States of America, in United States Currency and shall be paid within thirty days after presentation of proof of interest certified by said Reassured which certificate shall be considered as satisfactory proof of loss.

-5-

JOHN F. SULLIVAN CO.

TREATY 035

In the event of the payment of any loss by the Reinsurers under this Contract in respect of Workman's Compensation business the said Reinsurers shall be subrogated to the extent of such payment to all of the rights of the Reassured against any person or other entity legally responsible in damages for said accident. The Reassured hereby agrees to enforce such rights, but in case the Reassured shall refuse or neglect to do so, the Reinsurers are hereby authorized and empowered to bring any appropriate action in the name of the Reassured or its policyholders, or otherwise enforce such rights. Any amount recovered as a result of such proceedings shall be apportioned as follows:-

The Reinsurers shall first be reimbursed to the extent of their actual loss payments hereunder in addition to expenses incurred in connection with such proceedings; if any balance then remains, said balance shall be applied to reimburse the Reassured.

## ARTICLE 6

This Contract in no way applies to protect any liability of the Reassured other than that in respect of its direct underwriting, cessions under re-insurance treaties or pooling agreements and acceptances of specific Reinsurances. Liability in respect of Excess of Loss Reinsurances is excluded from the protection of this Contract and cannot be taken into account in arriving at the amount in excess of which liability attaches hereto.

## ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of the occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U.S. $1,925,000 any one occurrence and/or accident, nor more than $1,925,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

## ARTICLE 8

The premium to be paid to the Reinsurers shall be 1.60% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premium of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A Deposit Premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st July, 1968 and annually thereafter. As promptly as possible following the close of each quarter the Reassured shall furnish statements of its gross net premium income as defined herein, and at such time as the total premium due Reinsurers in any one year exceeds $500,000 the excess thereof shall then

-7-

JOHN F. SULLIVAN Co.

TREATY 036

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 40 of 107

be paid to Reinsurers. Should, however, the total premium due Reinsurers in any one year be less than U.S. $300,000 there shall be no refund to the Reassured, the said U.S. $500,000 being deemed the Minimum Annual Premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.60% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $500,000 whichever is the greater.

Should this Contract be cancelled by the Reassured the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.60% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S. $500,000 whichever is the greater.

### ARTICLE 9

Premiums and losses hereunder shall be payable in United States Currency.

### ARTICLE 10

The Reinsurers or their duly accredited representatives shall have free access to the books and records of the Reassured at all reasonable times for the purpose of obtaining information concerning this Contract, or the subject matter thereof.

### ARTICLE 11

As a condition precedent to any right of action hereunder, if any dispute shall arise between the Reassured and the Reinsurers with reference to the interpretation of this Contract or the rights with respect to any transaction involved, the dispute shall be referred to two Arbitrators, one to be chosen by each party and such Arbitrators shall choose an Umpire before entering upon the reference and in the event of said Arbitrators not agreeing the decision of said Umpire shall be final and binding upon all parties. The Arbitrators and the Umpire shall interpret this Contract as an honourable engagement and they shall make their award with a view to effecting the general purpose of this Contract in a reasonable manner, rather than in accordance with a literal interpretation of the language. Said Arbitration to take place in Los Angeles, California.

### ARTICLE 12

It is agreed that in the event of the failure of Reinsurers to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Reassured, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

-8-

JOHN F. SULLIVAN CO.

It is further agreed that service of process in such suit may be made upon Messrs. Mendes and Mount, 27 William Street, New York, New York, 10005, and that in any suit instituted against any one of them upon this Contract, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Reassured to give a written undertaking to the Reassured that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Reassured or any beneficiary hereunder arising out of this Contract, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

## ARTICLE 13

Should the Reassured at any time be placed in the hands of a Receiver, Assignee, Trustee or State Commissioner of Insurance for the purpose of liquidation on account of insolvency, any sums payable to the Reassured in respect of losses which the Reassured shall not have paid to its Assured shall be deemed to be transferred to, and vested in, those Assureds whose losses gave rise to the claim in favor of the Reassured against the Reinsurers provided that the Reinsurers shall be entitled to set off all moneys owing to them on any account, including premiums due or accruing due, against any sums payable to the Reassured in the following order: First, against any sums payable to the Reassured in respect of losses which the Reassured shall have paid to its Assured: Second, against any sums payable to the Reassured in respect of expenses incurred in connection with losses which the Reassured shall not have paid to its Assured; and Third, against any sums payable to the Reassured in respect of losses which the Reassured shall not have paid to its Assured. Any balance in favor of the Reassured in respect of Item Third aforesaid, shall be divided among, and paid to, such Assured, or the payees named in their policies, in strict proportion to Reinsurers' liability in respect of each such Assured's finally adjusted loss claim under this Contract. If the liability of the Reinsurers exceeds the liability of the Reassured to its Assured, nothing herein contained shall affect the rights of the Reassured against the Reinsurers in respect of such excess, and if the liability of the Reinsurers is less than the liability of the Reassured to its Assured, nothing herein contained shall affect the rights of the Assured against the Reassured in respect of the balance. Subject as aforesaid, all payments by the Reinsurers directly to Assured or payees shall fully discharge and release the Reinsurers from all liability.

## ARTICLE 14

Notice is hereby given that the Reinsurers have agreed to allow for the purpose of paying Federal Excise Tax, 1% of the premium payable hereon to the extent such premium is subject to Federal Excise Tax.

-9-

JOHN F. SULLIVAN Co.

TREATY 038

It is understood and agreed that in the event of any return of premium becoming due hereunder the Reinsurers will deduct 1% from the amount of the return and the Reassured or its agent should take steps to recover the Tax from the U. S. Government.

### ARTICLE 15

In consideration of the terms under which this Contract is issued, the Reassured undertakes not to claim any deduction in respect of the premium hereon when making tax returns, other than Income or Profits Tax returns, to any State or Territory or the District of Columbia.

### ARTICLE 16

Notwithstanding any provision in this Contract to the contrary, it is understood and agreed that this Contract shall protect the Reassured within the limits hereof, in connection with any loss for which the Reassured may be legally liable to pay in excess of the limit of its original policy, where loss in excess of the limit has been incurred because of its failure to settle within the policy limit or by reason of alleged or actual negligence, fraud or bad faith in rejecting an offer of settlement or in the preparation of the defense or in the trial of any action against its Insured or in the preparation or prosecution of an appeal consequent upon such action.

### ARTICLE 17

In the event of the insolvency of the Reassured, this reinsurance shall be payable directly to the Reassured, or to its liquidator, receiver, conservator or statutory successor on the basis of the liability of the Reassured without diminution because of the insolvency of the Reassured or because the liquidator, receiver, conservator or statutory successor of the Reassured has failed to pay all or a portion of any claim. It is agreed, however, that the liquidator, receiver, conservator or statutory successor of the Reassured shall give written notice to the Reinsurers of the pendency of a claim against the Reassured indicating the policy or bond reinsured which claim would involve a possible liability on the part of the Reinsurers within a reasonable time after such claim is filed in the conservation or liquidation proceeding or in the receivership, and that during the pendency of such claim, the Reinsurers may investigate such claim and interpose, at their own expense, in the proceeding where such claim is to be adjudicated any defence or defences that they may deem available to the Reassured or its liquidator, receiver, conservator or statutory successor. The expense thus incurred by the Reinsurers shall be chargeable, subject to the approval of the court, against the Reassured as part of the expense of conservation or liquidation to the extent of a pro rata share of the benefit which may accrue to the Reassured solely as a result of the defence undertaken by the Reinsurers.

### ARTICLE 18

All notices or communications relating to this Contract together with all advices, bordereaux, accounts and remittances in connection therewith shall be forwarded through John F. Sullivan Co., 912 White-Henry-Stuart Building, Seattle, Washington, 98101.

-10-

JOHN F. SULLIVAN CO.



SIGNED, in duplicate, this        day of        , 1968.

For and on behalf of:

    The Undersigned Underwriting Members of Lloyd's
    whose names are appended hereto each in the
    proportion as set against his respective
    name.

                       67_0+2

                   part of 100,000

-11-

John F Sullivan Co

TREATY 040

The Policy or other Contract dated on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as binding the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless a Seal at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye, that We the Underwriters members of the Syndicate(s) whose definitive Numbers in the attached List are set out in the Table overleaf, or attached overleaf, hereby bind Ourselves, each for his own part and not one for another, and in respect of his due proportion only, to pay or make good to the Assured all such Loss and/or Damage which he or they may from time to time sustain by any one or more of the aforesaid perils during the said period within seven days after such Loss and/or Damage is proved, and so that the due proportion for which each of Us the Underwriters is liable shall be ascertained by reference to the respective proportions ascertained according to the said List of the Amount, Percentage or Proportion of the sum assured which is in the said Table set opposite the definitive Number of the Syndicate of which such Underwriter is a member.

IN WITNESS whereof the Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of Us.

LLOYD'S POLICY SIGNING OFFICE

Manager

| AMOUNT, PERCENTAGE or PROPORTION | BROKER | L P S O No & DATE | PAGE |
|---|---|---|---|
| PER CENT | 509 | 42704 14 11 48-1 | |
| | SYNDICATE | UNDERWRITER'S REF. | |
| 71.85 | 210 | 153E | |
| 10.02 | 860 | 266A06 | |
| 7.24 | 311 | 1459 J43A | |
| 2.91 | 773 | 3210796182 | |
| .07 | 768 | 9810501 9AB07 | |
| 1.94 | 484 | 0T527933 | |
| 1.45 | 33 | 400F | |
| .03 | 49 | 417X10A69 | |
| .05 | 402 | 417X10A6B | |
| .73 | 333 | 18701 | |
| .07 | 162 | AX0238171 | |
| 1.21 | 219 | 246 P7P | |
| .07 | 584 | 097 | |
| .40 | 559 | T46102207 | |
| .57 | 100 | 0AX2558 | |
| .07 | 146 | 7AT4 | |
| 1.45 | 465 | 11190S | |
| 2.91 | 56 | 51XP915 | |
| 1.94 | 975 | 190E8 | |
| 1.02 | 640 | PR210 | |

| | TOTAL LINE | |
|---|---|---|
| 70 | 57.94 | |

TREATY 041

C.R. 13344

ADDENDUM NO. 1

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight June 30, 1968 Article 11
is deleted in its entirety.

All other terms and conditions of the Contract remain unchanged.

SIGNED, in duplicate, this *11th* day of *December*, 1968.

For and on behalf of:

The Undersigned Underwriting Members of Lloyd's
whose names are appended hereto each in the
proportion as set against his respective name.

67.95%

part of 100.00%



TREATY 042

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 46 of 107



Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 47 of 107



C.R. 13566

ADDENDUM NO. 1

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight June 14, 1968 Article 15
is deleted in its entirety.

All other terms and conditions of the Contract remain unchanged.

SIGNED, in duplicate, this 6TH day of DECEMBER, 1968.

In witness whereof I being a representative of
the Leading Office which is duly authorized by
the Reinsurers have hereunto subscribed my
name on their behalf.

AMERICAN INSURANCE COMPANY LIMITED

JOHN F. SULLIVAN Co.



TREATY 044



| | |
|---|---|
| EXCESS INSURANCE COMPANY LIMITED | 19.53% |
| TORSCON INSURANCE COMPANY | 3.50% |
| STRONGHOLD INSURANCE COMPANY LIMITED | 1.94% |
| EAGLE STAR INSURANCE COMPANY LIMITED | .49% |
| GENERAL REINSURANCE COMPANY LIMITED | .65% |
| MINSTER INSURANCE COMPANY LIMITED | .32% |
| INSURANCE COMPANY OF NORTH AMERICA | 9.91% |
| | 32.04% |
| | part of 100.00% |

-2

JOHN F. SULLIVAN Co.

TREATY 045



C.R. 13944

ADDENDUM NO. 2

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

Agreed effective midnight, June 30, 1969:

1.   Article 4 shall read as follows:

### ARTICLE 4

The premium to be paid to the Reinsurers shall be 1.02 of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A Deposit Premium of U.S. $750,000 shall be paid to the Reinsurers on the 1st July, 1969 and annually thereafter. As promptly as possible following the close of each quarter the Reassured shall furnish statements of its gross net premium income as defined herein, and at such time as the total premium due Reinsurers in any one year exceeds $750,000 the excess thereof shall be paid to Reinsurers. Should, however, the total premium due Reinsurers in any one year be less than U.S. $750,000 there shall be no refund to the Reassured, the said U.S. $750,000 being deemed the Minimum Annual Premium for this Contract.

BV AG 6/30/69 (17/7/69)

JOHN D. SHAUGHNESSY CO.

TREATY 046



C.N. 13543

In the event of this Contract being cancelled by the Reinsurers the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata at the Minimum Premium of U.S. $750,000 whichever is the greater.

Should this Contract be cancelled by the Reassured the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S. $750,000 whichever is the greater.

2.   Article 14, Federal Excise Tax Clause, does not apply to Lloyd's Underwriters.

3.   Underwriters and their participations are as signed hereon and not as previously signed.

All other terms and conditions of the Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 10th day of January 1968

For and on behalf of Reassurers:

LLOYD'S, LONDON                                        64,502

                                              part of 100.00%

BO-46 6/30/67 (2/71) — 2

JOHN E. SULLIVAN CO.

TREATY 047



TREATY 048



ADDENDUM NO. 2

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

Agreed effective Midnight, June 30, 1969.

1. Article 8 shall read as follows:

ARTICLE 8

The premium to be paid to the Reinsurers shall be 3.0% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A Deposit Premium of U.S. $750,000 shall be paid to the Reinsurers on the 1st July, 1969 and annually thereafter. As promptly as possible following the close of each quarter the Reassured shall furnish statements of its gross net premium income as defined herein, and at such time as the total premium due Reinsurers in any one year exceeds $750,000 the excess thereof shall then be paid to Reinsurers. Should, however, the total premium due Reinsurers in any one year be less than U.S. $750,000 there shall be no refund to the Reassured, the said U.S. $750,000 being deemed the Minimum Annual Premium for this Contract.

80-46 6/30/69 (12/1/59)

JOHN F SULLIVAN CO.

TREATY 049

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 53 of 107



W.R. 1356A

In the event of this Contract being cancelled by the Reinsurers the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $750,000 whichever is the greater.

Should this Contract be cancelled by the Reassured the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S. $750,000 whichever is the greater.

2.   Article 14, Federal Excise Tax Clause - does not apply to Lloyd's Underwriters.

3.   Underwriters and their participations are as signed hereon and not as previously signed.

All other terms and conditions of the Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 14th day of January 1970 1969

For and on behalf of Reinsurers:

In witness whereof I being a representative of the Leading Office which is duly authorized by the Reinsurers have hereunto subscribed my name on their behalf.

EXCESS INSURANCE COMPANY, LIMITED

| | |
|---|---|
| EXCESS INSURANCE COMPANY, LIMITED | 15.00% |
| TUREGUM INSURANCE COMPANY | 7.50% |
| STRONGHOLD INSURANCE COMPANY, LIMITED | 2.00% |
| INSURANCE COMPANY OF NORTH AMERICA | 10.00% |
| | 35.50% |
| | part of 100.00% |

90-46 6/30/69 (12/1/69)

-7-

JOHN F SULLIVAN CO.

TREATY 050

ADDENDUM NO. 3

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1970:

1. Article 6 shall read as follows:

### ARTICLE 8

The premium to    aid to the Reinsurers shall be 2.20% of the Reassured's
entire gross no-    mium income (i.e. exclusive of membership fees and
surplus deposi .    .d:: retrospective policies) under Policies and Contracts
of Insurance and/or Reinsurance, as previously defined herein, which shall
accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be
construed to mean the gross written premiums of the Reassured after making
proper deductions for all return premiums (other than savings returned to
policyholders on Direct Business), and cancellations and reinsurance
premiums, if any, paid by the Reassured for reinsurances, recoveries under
which shall inure to the benefit of these Reinsurers.

A Deposit Premium of U.S.$1,000,000 shall be paid to the Reinsurers on the
1st of July, 1970 and annually thereafter. As promptly as possible follow-
ing the close of each quarter, the Reassured shall furnish statements of
its gross net premium income, as defined herein, and as such time as the
total premium due Reinsurers in any one year exceeds $1,000,000 the excess
thereof shall then be paid to Reinsurers. Should, however, the total
premium due Reinsurers in any one year be less than U.S.$1,000,000 there
shall be no refund to the Reassured, the said U.S.$1,000,000 being deemed
the Minimum Annual Premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium
for that portion of the last annual period this Contract was in force shall
be calculated at 2.20% of pro rata of the Reassured's gross net premium

BO-46 6/30/70

TREATY 051

income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S.$1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated as 2.20% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S.$1,000,000 whichever is the greater.

7.  Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 25th day of Aug. 1970.

For and on behalf of Reinsurers:

LLOYD'S, LONDON                                               33.00%

                                                        part of 100%

20-48  6/30/70

-2-

Now Know Ye that ...

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS PUBLISHED 1974/76

TREATY 053



ADDENDUM NO. 1

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
each for its own part and not one for the other
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1970:

1   Article 8 shall read as follows:

### ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.20% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A Deposit Premium of U.S. $1,000,000 shall be paid to the Reinsurers on the 1st of July, 1970 and annually thereafter. As promptly as possible following the close of each quarter, the Reassured shall furnish statements of its gross net premium income, as defined herein, and at such time as the total premium due Reinsurers in any one year exceeds $1,000,000 the excess thereof shall then be paid to Reinsurers. Should, however, the total premium due Reinsurers in any one year be less than U.S.$1,000,000 there shall be no refund to the Reassured, the said U.S.$1,000,000 being deemed the Minimum Annual Premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.20% of pro rata of the Reassured's gross net premium

60-66  6/16/70

JOHN L SULLIVAN Co

TREATY 054



income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S $1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2,20% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S.$1,000,000 whichever is the greater.

7. Reinsurers and their participations are as signed hereon and are as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 16" day of _____ 1970.

For and on behalf of Reinsurers:

In witness whereof I being a representative of the Leading Office which is duly authorised by the Reinsurers have hereunto subscribed my name on their behalf

EXCESS INSURANCE COMPANY, LIMITED

... ER NON-MARINE TREATY DEPT.
EXCESS INSURANCE CO LTD

EXCESS INSURANCE COMPANY, LIMITED                                        17,70%

DOMINION INSURANCE COMPANY, LIMITED                                      25.00%

PER H. S. WEAVERS (UNDERWRITING) AGENCIES, LTD.                          5.50%

50% NATIONAL CASUALTY COMPANY
12½% ACCIDENT & CASUALTY INSURANCE COMPANY
25% NATIONAL CASUALTY CO. OF AMERICA, LTD.
12½% BERMUDA FIRE & MARINE INSURANCE CO., LTD.

WORLD AUXILIARY INSURANCE CORPORATION, LTD                              5.00%

INDEMNITY GUARANTEE ASSURANCE (Per H. Bensly & Co.)                     1.25%

STRONGHOLD INSURANCE COMPANY                                            2.25%

                                                                       57.00%

                                                                    part of 100%

BH.C  8/20/70

JOHN P SULLIVAN Co

TREATY 055

C.N. 14620

ADDENDUM NO. 4

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1973:

1.    Article 3 shall read as follows:

ARTICLE 3

(A)  Except as respects Third Party Liability policies which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on account of loss by any one occurrence and/or accident an amount in excess of U. S. $100,000 ultimate net loss in any one occurrence and/or accident, and the amount recoverable hereunder shall be the amount in excess of such U.S. $100,000 but such amount recoverable shall not exceed a further U.S. $1,900,000 hereunder in respect of any one occurrence and/or accident.

(B)  With respect to Third Party Liability policies, excluding Trucking business, which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay  or by final judgment be adjudged to pay to its Insured or Reinsured on its not retained lines, an amount in excess of U.S. $100,000 of losses in the aggregate under each policy during each policy year and the amount recoverable hereunder shall be the amount in excess of such U.S. $100,000 aggregate ultimate net loss sustained by the Reassured in respect of each policy during each policy year, but such amount recoverable shall not exceed a further U.S. $1,900,000 hereunder in the aggregate under each policy during each policy year.

80-46 7/1/71

TREATY 056

C.N. 14620

The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

For the purpose of this Section (8), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $100,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2.  Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U. S. $100,000 no legal costs shall be payable by the Reinsurers hereon.

3.  Article 7 shall read as follows:

ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U. S. $1,900,000 any one occurrence and/or accident, nor more than $1,900,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

80-46 7/1/71                    -2-

JOHN F. SULLIVAN Co.

TREATY 057

C.N. 14620

4.    Paragraphs 1, 4 and 5 of Article 8 shall read as follows:

ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.0% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

5.    Article 14 is prefaced as follows:

(Applying only to those Reinsurers, excepting Underwriters at Lloyd's and other Reinsurers exempt from Federal Excise Tax, who are domiciled outside the United States of America)

6.    Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 27th day of October 1971.

For and on behalf of:

LLOYD'S, LONDON                           42.61% part of
                                          95.00% of 100%

NO-4a 7/1/71                -3-

JOHN F. SULLIVAN CO.

TREATY 058

This Policy or other Contract made on or after 1st January, 1924, will be recognised by the Corporation of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye that [illegible]

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us.

LLOYD'S POLICY SIGNING OFFICE

Declares Receipt of Syndicate and Amount Percentage or Proportion of the Total Sum insured hereunder shared between the Members of those Syndicates.

| PER CENT | | |
|---|---|---|
| | 509 | 63603 21 nal 71 |
| 10.87 | 524 | 710150381 |
| 10.87 | 060 | 264606 |
| 4.35 | 311 | 145R4612 |
| 4.35 | 854 | G0080424308 |
| 3.04 | 56 | X21009151 |
| 4.15 | 772 | 3210306187 |
| 1.30 | 164 | AA923817172 |
| 1.74 | 975 | 130ER |
| 1.74 | 484 | XF527933 |

THE LIST OF UNDERWRITING MEMBERS OF LLOYDS IS NUMBERED 197178

| | |
|---|---|
| 91 | 42.61 |



Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 63 of 107

ADDENDUM NO.

to

CONTRACT OF REINSURANCE

Issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured'

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1971

I.    Article 3 shall read as follows:

## ARTICLE 3

(A)  Except as respects Third Party Liability policies which are subject
to aggregate limits of liability, no claim shall be paid for any
loss under this Contract unless the Reassured shall by law become
liable to pay and shall pay, or by final judgment be adjudged to pay
to its Insured or Reinsured on account of loss by any one occurrence
and/or accident an amount in excess of U. S. $100,000 ultimate net loss
in any one occurrence and/or accident, and the amount recoverable
hereunder shall be the amount in excess of such U.S. $100,000 but
such amount recoverable shall not exceed a further U.S. $1,900,000
hereunder in respect of any one occurrence and/or accident.

(B)  With respect to Third Party Liability policies, excluding Truckline
business, which are subject to aggregate limits of liability, no
claim shall be paid for any loss under this Contract unless the
Reassured shall by law become liable to pay and shall pay, or by
final judgment be adjudged to pay to its Insured or Reinsured on
its net retained lines, an amount in excess of U/S $100,000 of
losses in the aggregate under each policy during each policy year
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $100,000 aggregate ultimate net loss sustained by the
Reassured in respect of each policy during each policy year, but such
amount recoverable shall not exceed a further U.S. $1,900,000 here-
under in the aggregate under each policy during each policy year.

80-46 7/1/71

JOHN F SULLIVAN Co

TREATY 060



The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

For the purpose of this Section (a) the date of loss in respect of the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease on the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $100,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2.    Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $100,000 no legal costs shall be payable by the Reinsurers hereon.

3.    Article 7 shall read as follows:

## ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U.S. $1,900,000 any one occurrence and/or accident, nor more than $1,900,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

RU-44 7/1/71                    -2-

JOHN F. SULLIVAN Co.

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 65 of 107



C-V. 16629

4.   Paragraphs 1, 4 and 5 of Article H shall read as follows:

## ARTICLE H

The premium to be paid to the Reinsurers shall be 2.0% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policy(s)) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

5.   Article H is prefaced as follows:

(Applying only to those Reinsurers, excepting Underwriters at Lloyd's and other Reinsurers exempt from Federal Excise Tax, who are domiciled outside the United States of America)

6.   Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate in London, England, this 29th day of September 1971.

For and on behalf of Reinsurers:

It witness whereof I being a representative of the Leading Office which is duly authorized by the Reinsurers have subscribed my name on their behalf.

EXCESS INSURANCE COMPANY, LIMITED

80-46 7/1/71                              -3-

JOHN F SULLIVAN CO.

TREATY 062

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 66 of 107



C.W. 14620

EXCESS INSURANCE COMPANY, LIMITED                    15.72%

T71/3713/3601

DOMINION INSURANCE COMPANY, LIMITED                  23.74%

NATIONAL CASUALTY COMPANY                        50.00%)
                                                      )
ACCIDENT AND CASUALTY INSURANCE COMPANY               )
      OF WINTERTHUR                               12.50%)
                                                      )
NATIONAL CASUALTY COMPANY OF AMERICA,                 )  5.43%
      LIMITED                                     25.00%)
                                                      )
BERMUDA FIRE AND MARINE INSURANCE COMPANY,            )
      LIMITED                                     12.50%)
                                                   ————————

                                                   42.38% part
                                                   of 95.00% of
                                                   100.00%

80-A6 7/1/71                          1

JOHN F. SULLIVAN CO.

TREATY 063

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 67 of 107

C.N. 14620

ADDENDUM NO. 5

to

CONTRACT OF REINSURANCE

Issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1972:

1.    Article 8 is deleted and replaced by the following:

### ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.50% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

BD-46  7/1/72

TREATY 064

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 68 of 107

C.N. 14520

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

2.    Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this         /6th         day

of         October         , 1972.

For and on behalf of:

LLOYD's, LONDON

46.50%

part of 100.00%

BG-45  7/1/72                    -2-

TREATY 065

PER CENT | 509 | 65350 | 21 | 09 | 72 |
12.50 | 524 | 7201503R1
12.50 | 860 | 264406
6.00 | 311 | 14XSR4664
3.50 | 56 | X21009I5L
5.00 | 772 | 3270196182
1.50 | 975 | 130ER
2.00 | 484 | XT527933
1.50 | 164 | AA923B171Y/
2.00 | 854 | GQ080424308

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED, 1972/V

TREATY 066

Case 1:26-cv-01709-LAK     Document 1-2     Filed 03/02/26     Page 70 of 107



L.N. 14620

ADDENDUM NO. 9

TO

CONTRACT OF REINSURANCE

Issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(each to its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective midnight, June 30, 1972:

1.    Article 8 is deleted and replaced by the following:

ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.50% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

80-46  7/1/72

JOHN F. SULLIVAN Co

TREATY 067

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 71 of 107



C.R. 14670

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

2    Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this    3rd    day
of    October    1972.

For and on behalf of Reinsurers:

In witness whereof I being a representative of the Leading Office which is duly authorized by the Reinsurers have subscribed my name on their behalf.

EXCESS INSURANCE COMPANY, LIMITED /s/  T E Gunn

EXCESS INSURANCE COMPANY, LIMITED  T72/3202/2424/051    25.00%

DOMINION INSURANCE COMPANY, LIMITED    18.75%

WALBROOK INSURANCE COMPANY LIMITED    16.05%

|  | (50.0% NATIONAL CASUALTY COMPANY |
| 37.16% | (12.5% ACCIDENT & CASUALTY INSURANCE COMPANY |
|  | (12.5% BERMUDA FIRE & MARINE INSURANCE COMPANY LTD |
|  | (25.0% NATIONAL CASUALTY COMPANY OF AMERICA LTD. |
| 24.52% | (77.0% LONDON & EDINBURGH GENERAL INSURANCE CO. LTD. |
|  | (23.0% BISHOPSGATE INSURANCE COMPANY LIMITED |

DATE OF 1972

02-46  7/1/72    -2-

JOHN F. SULLIVAN CO

TREATY 068

C.R. 14620

ADDENDUM NO. 6

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1973:

1. Article 3 shall read as follows:

ARTICLE 3

(A) Except as respects Third Party Liability policies which are sub-
ject to aggregate limits of liability, no claim shall be paid for
any loss under this Contract unless the Reassured shall by law
become liable to pay and shall pay, or by final judgment be ad-
judged to pay to its Insured or Reinsured on account of loss by
any one occurrence and/or accident an amount in excess of U. S.
$150,000 ultimate net loss in any one occurrence and/or accident,
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $150,000 but such amount recoverable shall not exceed
a further U.S. $1,850,000 hereunder in respect of any one occur-
rence and/or accident.

(B) With respect to Third Party Liability policies, excluding Trucking
business, which are subject to aggregate limits of liability, no
claim shall be paid for any loss under this Contract unless the
Reassured shall by law become liable to pay and shall pay, or by
final judgment be adjudged to pay to its Insured or Reinsured on
its net retained lines, an amount in excess of U.S. $150,000 of
losses in the aggregate under each policy during each policy year
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $150,000 aggregate ultimate net loss sustained by the
Reassured in respect of each policy during each policy year, but
such amount recoverable shall not exceed a further U.S. $1,850,000
hereunder in the aggregate under each policy during each policy year.

The term 'policy year' shall mean each separate original policy
period but not exceeding 12 months commencing at the inception,
anniversary or renewal date of such original policy.

BO-46  7/1/73

TREATY 069

C.H. 14620

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $150,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is especially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2. Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If, however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $150,000 no legal costs shall be payable by the Reinsurers hereon.

3. Article 7 shall read as follows:

### ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U.S. $1,850,000 any one occurrence and/or accident, nor more than $1,850,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

00-46  7/1/73                    -2-

TREATY 070

C.H. 14620

4.  Article 8 is deleted and replaced by the following:

### ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.25% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter.  As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions.  Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

80-46  7/1/73

TREATY 071

D.H. 14620

9. Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this _2nd_ day of _September_, 1973.

For and on behalf of.

LLOYD'S, LONDON

51.50%

part of 100.00%

─────────

90-4G 7/1/73              -4-

JOHN F SULLIVAN CO

TREATY 072

 

No Policy or other Contract dated on or after 1st January, 1981, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears or has the Seal of Lloyd's Policy Signing Office.

Now know ye that We the Underwriting Members of the Syndicates whose definitive numbers in the aftermentioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good all such sums as may become due under Contracts hereby covered between the dates specified in the attached Table...

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 1973/9

| AMOUNT PERCENTAGE OR PROPORTION | SYNDICATE | REFERENCE NO. & DATE |
|---|---|---|
| PER CENT | 509 | a5903 31 08 73 1 |
| 12.50 | 860 | 269056 |
| 12.50 | 311 | 14X564725 |
| 10.00 | 404 | XT527935 |
| 4.25 | 918 | TXS4007030010 |
| .75 | 586 | TXS40070301 0 |
| 3.00 | 990 | 020ER |
| 6.00 | 56 | K21009152 |
| 2.00 | 854 | G00804249 GA |
| 2.50 | 190 | 961C01450 |
| 5.00 | 772 | >27019618E |

| | |
|---|---|
| 10 | 54.50 |

TREATY 073

ADDENDUM NO. 6

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1977:

I.  Article 3 shall read as follows:

### ARTICLE 3

(A) Except as respects Third Party Liability policies which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on account of loss by any one occurrence and/or accident an amount in excess of U.S. $150,000 ultimate net loss in any one occurrence and/or accident, and the amount recoverable hereunder shall be the amount in excess of such U.S. $150,000 but such amount recoverable shall not exceed a further U.S. $1,850,000 hereunder in respect of any one occurrence and/or accident.

(B) With respect to Third Party Liability policies, excluding Trucking business, which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on its net retained lines, an amount in excess of U.S. $150,000 of losses in the aggregate under each policy during each policy year, and the amount recoverable hereunder shall be the amount in excess of such U.S. $150,000 aggregate ultimate net loss sustained by the Reassured in respect of each policy during each policy year, but such amount recoverable shall not exceed a further U.S. $1,850,000 hereunder in the aggregate under each policy during each policy year.

The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

80-60  7/1/77

JOHN P. SULLIVAN

TREATY 074

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 78 of 107



L.N. 1A62D

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $150,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is especially agreed that for all purposes of this Contract the term "any one occurrence and/or accident" shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2.  Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising in which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they do consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If, however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $150,000 no legal costs shall be payable by the Reinsurers hereon.

3.  Article 7 shall read as follows:

ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium but nevertheless the Reinsurers' liability shall never be more than U.S. $1,850,000 any one occurrence and/or accident, nor more than $1,850,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

RD-66  1/17/3                    -5-

JOHN F SULLIVAN INC

INDEX NO. 650475/2026
RECEIVED NYSCEF: 01/27/2026

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 79 of 107

C No. 16620

4. Article B is deleted and replaced by the following:

## ARTICLE B

The premium to be paid to the Reinsurers shall be 2.25% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premium of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1971 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

Renewal 7/1/73                                    -3-

JOHN P SULLIVAN Co.

TREATY 076

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 80 of 107



C.R. 1462(

3. Reinsurers and their participations are as agreed herein and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this            2nd.           day

of       October           , 1973.

For and on behalf of the Reinsurers:

In witness whereof I, being a representative of the Leading Office which is duly authorised by the Reinsurers, have hereunto subscribed my name on their behalf.

HEMISIUS INSURANCE COMPANY, LIMITED

for Accident Manager

DOMINION INSURANCE COMPANY, LIMITED                                     18.50%

PER H.S. WEAVERS (UNDERWRITING) AGENCIES LTD.                           7.90%

27.40%  Walbrook Insurance Company, Ltd.

        (50.00% National Casualty Company
27.40%  (12.50% Accident & Casualty Ins. Co. of Winterthur
        (12.50% Bermuda Fire & Marine Insurance Co., Ltd.
        (25.00% National Casualty Co. of America, Ltd.

17.90%  (77.00% London & Edinburgh General Ins. Co., Ltd.
        (23.00% Bishopsgate Insurance Company, Ltd.

27.40%  St. Katherine Insurance Company, Ltd.
100.00%

26.40%
part of 100.00%

80-46  7/1/73                    -4.

JOHN E. SOLICITORS LTD

TREATY 077

C.N. 14620

ADDENDUM NO. 7

to

CONTRACT OF REINSURANCE

issued to:

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reinsured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is hereby agreed that effective 1st July, 1973, Article 13, SERVICE OF SUIT CLAUSE, is replaced by the following:

## ARTICLE 12

SERVICE OF SUIT CLAUSE (U.S.A.) (Applies only to those Reinsurers who are domiciled outside the United States of America.)

In the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Exchange, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Sedgwick, Detert, Moran & Arnold, 111 Pine Street, San Francisco, California 94111, and in any suit instituted against any one of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Exchange to give a written undertaking to the Exchange that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any State, Territory or District of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office.

80-46  9/1/73

JOHN F. SULLIVAN CO.

TREATY 078

O.N. 14620

as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Exchange or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate in London, England, this 24th day of September, 1973.

For and on behalf of:

LLOYD'S, LONDON

54.50%
part of 100.00%

80-46   9/1/73                              -2-

JOHN F. SULLIVAN CO.

TREATY 079

C.N. 14620

The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $100,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2. Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U. S. $100,000 no legal costs shall be payable by the Reinsurers hereon.

3. Article 7 shall read as follows:

ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U. S. $1,900,000 any one occurrence and/or accident, nor more than $1,900,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

80-46 7/1/71                     -2-

JOHN F. SULLIVAN CO.

TREATY 057

C.N. 14620

4.  Paragraphs 1, 4 and 5 of Article 8 shall read as follows:

ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.0% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or short rate of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

5.  Article 14 is prefaced as follows:

(Applying only to those Reinsurers, excepting Underwriters at Lloyd's and other Reinsurers exempt from Federal Excise Tax, who are domiciled outside the United States of America)

6.  Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 27th day of October 1971.

For and on behalf of:

LLOYD'S, LONDON                                    42.61% part of
                                                   95.00% of 100%

NO-46 7/1/71                    -3-

JOHN F. SULLIVAN Co.

TREATY 058

No Policy or other Contract made on or after 1st January, 1924, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye that ...

In Witness whereof the General Manager of Lloyd's Policy Signing Office has subscribed his name on behalf of each of us

LLOYD'S POLICY SIGNING OFFICE

General Manager

| PER CENT | | | | | |
|---|---|---|---|---|---|
| | 509 | 63603 | 21 | 081 71 | |
| 10.87 | 524 | 710150381 | | | |
| 10.87 | 060 | 264606 | | | |
| 4.35 | 311 | 145R4612 | | | |
| 4.35 | 854 | G008042430R | | | |
| 3.04 | 56 | X21009152 | | | |
| 4.15 | 772 | 321030618? | | | |
| 1.30 | 164 | AA92381?1Y2 | | | |
| 1.74 | 975 | 130ER | | | |
| 1.74 | 484 | XF527933 | | | |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 19717L

| | |
|---|---|
| 91 | 42.61 |

**FILED: NEW YORK COUNTY CLERK 01/27/2026 12:35 PM**
INDEX NO. 650475/2026
NYSCEF DOC. NO. 6
RECEIVED NYSCEF: 01/27/2026

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 86 of 107



ADDENDUM NO. 4

to

CONTRACT OF REINSURANCE

Issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Re-assured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1971

I.     Article 3 shall read as follows:

### ARTICLE 3

(A)   Except as respects Third Party Liability policies which are subject
to aggregate limits of liability, no claim shall be paid for any
loss under this Contract unless the Reassured shall by law become
liable to pay and shall pay, or by final judgment be adjudged to pay
to its Insured or Reinsured on account of loss by any one occurrence
and/or accident an amount in excess of U. S. $100,000 ultimate net loss
in any one occurrence and/or accident, and the amount recoverable
hereunder shall be the amount in excess of such U.S. $100,000 but
such amount recoverable shall not exceed a further U.S. $1,900,000
hereunder in respect of any one occurrence and/or accident.

(B)   With respect to Third Party Liability policies, excluding Truckide
business, which are subject to aggregate limits of liability, no
claim shall be paid for any loss under this Contract unless the
Reassured shall by law become liable to pay and shall pay, or by
final judgment be adjudged to pay to its Insured or Reinsured on
its net retained lines, an amount in excess of U/S $100,000 of
losses in the aggregate under each policy during each policy year
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $100,000 aggregate ultimate net loss sustained by the
Reassured in respect of each policy during each policy year, but such
amount recoverable shall not exceed a further U.S. $1,900,000 here-
under in the aggregate under each policy during each policy year.

80-46 7/1/71

JOHN F SULLIVAN Co

TREATY 060



The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception, anniversary or renewal date of such original policy.

For the purpose of this Section (6) the date of loss in respect of the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease on the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable or deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $100,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2. Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $100,000 no legal costs shall be payable by the Reinsurers hereon.

3. Article 7 shall read as follows:

### ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium but nevertheless the Reinsurers' liability shall never be more than U.S. $1,900,000 any one occurrence and/or accident, nor more than $1,900,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

RU-44 7/1/71                                    -2-

JOHN F. SULLIVAN Co.



L-VA. 16625

4. Paragraphs 3, 4 and 5 of Article N shall read as follows:

### ARTICLE N

The premium to be paid to the Reinsurers shall be 7.0% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.0% of the pro rata of the Reassured's gross net premium income during the calendar year in which this Contract becomes cancelled, or pro rata of the Minimum Premium of U.S. $1,000,000 whichever is the greater.

5. Article L is prefaced as follows:

(Applying only to those Reinsurers, excepting Underwriters at Lloyd's and other Reinsurers exempt from Federal Excise Tax, who are domiciled outside the United States of America)

6. Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate in London, England, this 29th day of September 1972.

For and on behalf of Reinsurers:

In witness whereof I being a representative of the Leading Office which is duly authorized by the Reinsurers have subscribed my name on their behalf.

EXCESS INSURANCE COMPANY, LIMITED

80-4A 7/1/71                    -3-

JOHN F SULLIVAN CO.

TREATY 062

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 89 of 107



C.U. 14620

| | | |
|---|---|---|
| EXCESS INSURANCE COMPANY, LIMITED | | 15.28% |
| DOMINION INSURANCE COMPANY, LIMITED | | 21.74% |
| NATIONAL CASUALTY COMPANY | 50.00%) | |
| ACCIDENT AND CASUALTY INSURANCE COMPANY OF WINTERTHUR | 12.50%) | |
| NATIONAL CASUALTY COMPANY OF AMERICA, LIMITED | 25.00%) | 5.43% |
| BERMUDA FIRE AND MARINE INSURANCE COMPANY, LIMITED | 12.50%) | |

*T71/3713/3601* (handwritten)

42.39% part
of 95.00% of
100.00%

60-AB 7/1/71                L

JOHN F. SULLIVAN Co.

TREATY 063

C.N. 14620

ADDENDUM NO. 5

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1972:

1.    Article 8 is deleted and replaced by the following:

## ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.50% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premium of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

80-46  7/1/72

TREATY 064

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 91 of 107

C.X. 14520

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

2.    Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this _____ day

of _____ October _____, 1972.

For and on behalf of:

LLOYD's, LONDON                                    46.50%

                                           part of 100.00%

BG-46  7/1/72                    -2-

TREATY 065



THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED, 1972/V

TREATY 066



S.N. 14620

ADDENDUM NO. 9

to

CONTRACT OF REINSURANCE

Issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective midnight, June 30, 1972:

1.    Article 8 is deleted and replaced by the following:

### ARTICLE 8

The premium to be paid to the Reinsurers shall be 7.50% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premiums of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurance recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers

80-46  7/1/72

JOHN F. SULLIVAN Co

TREATY 067



C.N. 14670

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. 7500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 1.50% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

2    Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this    5th    day of    October    1972.

For and on behalf of Reinsurers:

In witness whereof I being a representative of the Leading Office which is duly authorized by the Reinsurers have subscribed my name on their behalf.

EXCESS INSURANCE COMPANY, LIMITED /s/ T E ....

| EXCESS INSURANCE COMPANY, LIMITED | T/N/32131-4/64/061 | 15.00% |
| DOMINION INSURANCE COMPANY, LIMITED | | 16.75% |
| WALBROOK INSURANCE COMPANY LIMITED | | 16.05% |

37.16%
(50.0% NATIONAL CASUALTY COMPANY
(12.5% ACCIDENT & CASUALTY INSURANCE COMPANY
(12.5% BERMUDA FIRE & MARINE INSURANCE COMPANY LTD
(25.0% NATIONAL CASUALTY COMPANY OF AMERICA LTD.

24.52%
(77.0% LONDON & EDINBURGH GENERAL INSURANCE CO. LTD.
(23.0% BISHOPSGATE INSURANCE COMPANY LIMITED

02-40  7/1472    -2-

JOHN F. SULLIVAN CO

TREATY 068

C.R. 14620

ADDENDUM NO. 6

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1973:

1. Article 3 shall read as follows:

ARTICLE 3

(A) Except as respects Third Party Liability policies which are sub-
ject to aggregate limits of liability, no claim shall be paid for
any loss under this Contract unless the Reassured shall by law
become liable to pay and shall pay, or by final judgment be ad-
judged to pay to its Insured or Reinsured on account of loss by
any one occurrence and/or accident an amount in excess of U. S.
$150,000 ultimate net loss in any one occurrence and/or accident,
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $150,000 but such amount recoverable shall not exceed
a further U.S. $1,850,000 hereunder in respect of any one occur-
rence and/or accident.

(B) With respect to Third Party Liability policies, excluding Trucking
business, which are subject to aggregate limits of liability, no
claim shall be paid for any loss under this Contract unless the
Reassured shall by law become liable to pay and shall pay, or by
final judgment be adjudged to pay to its Insured or Reinsured on
its net retained lines, an amount in excess of U.S. $150,000 of
losses in the aggregate under each policy during each policy year
and the amount recoverable hereunder shall be the amount in excess
of such U.S. $150,000 aggregate ultimate net loss sustained by the
Reassured in respect of each policy during each policy year, but
such amount recoverable shall not exceed a further U.S. $1,850,000
hereunder in the aggregate under each policy during each policy year.

The term 'policy year' shall mean each separate original policy
period but not exceeding 12 months commencing at the inception,
anniversary or renewal date of such original policy.

80-46  7/1/73

TREATY 069

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 96 of 107

C.H. 14620

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one Insured, such losses shall be deemed to arise out of one accident. A loss as respects each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $150,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is specially agreed that for all purposes of this Contract the term 'any one occurrence and/or accident' shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2.   Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising to which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If, however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $150,000 no legal costs shall be payable by the Reinsurers hereon.

3.   Article 7 shall read as follows:

### ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium, but nevertheless the Reinsurers' liability shall never be more than U.S. $1,850,000 any one occurrence and/or accident, nor more than $1,850,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

BO-46  7/1/73                    -2-

C.H. 14620

4.  Article 8 is deleted and replaced by the following:

### ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.25% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premium of the Reassured after making proper deductions for all return premiums (other than savings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1972 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

80-46  7/1/73

TREATY 071

Case 1:26-cv-01709-LAK Document 1-2 Filed 03/02/26 Page 98 of 107

D.H. 14620

9. Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 2nd day of September, 1973.

For and on behalf of.

LLOYD'S, LONDON

54.50%

part of 100.00%

90-AG 7/1/73 -4-

JOHN F. SULLIVAN CO.

TREATY 072

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 99 of 107




No Policy or other Contract dated on or after 1st January, 1931, will be recognised by the Committee of Lloyd's as entitling the holder to the benefit of the Funds and/or Guarantees lodged by the Underwriters of the Policy or Contract as security for their liabilities unless it bears at foot the Seal of Lloyd's Policy Signing Office.

Now Know Ye that We the Underwriters, Members of the Syndicates whose definitive numbers in the aforementioned List of Underwriting Members of Lloyd's are set out in the attached Table, hereby bind ourselves each for his own part and not one for another, our Heirs, Executors and Administrators, and in respect of his due proportion only, to pay or make good all such sums as may become due or payable to the Assured under the terms and conditions of this Policy...

| PER CENT | 509 | a5903 31 08 73 1 |
| --- | --- | --- |
| 12.50 | 860 | 269056 |
| 12.50 | 311 | 14XSR4725 |
| 10.00 | 404 | XT527935 |
| 4.25 | 918 | TXS40070501D |
| .75 | 586 | TXS40070501D |
| 3.00 | 990 | 020ER |
| 6.00 | 56 | K21009152 |
| 2.00 | 854 | G00804249CA |
| 2.50 | 190 | 961C01450 |
| 5.00 | 772 | >270196182 |

THE LIST OF UNDERWRITING MEMBERS
OF LLOYDS IS NUMBERED 197379

| | 10 | 54.50 |
| --- | --- | --- |

TREATY 073

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 100 of 107



ADDENDUM NO. 6

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reassured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is agreed that effective Midnight, June 30, 1977:

I.   Article 3 shall read as follows:

ARTICLE 3

(A) Except as respects Third Party Liability policies which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on account of loss by any one occurrence and/or accident an amount in excess of U. S. $150,000 ultimate net loss in any one occurrence and/or accident, and the amount recoverable hereunder shall be the amount in excess of such U.S. $150,000 but such amount recoverable shall not exceed a further U.S. $1,850,000 hereunder in respect of any one occurrence and/or accident.

(B) With respect to Third Party Liability policies, excluding Trucking business, which are subject to aggregate limits of liability, no claim shall be paid for any loss under this Contract unless the Reassured shall by law become liable to pay and shall pay, or by final judgment be adjudged to pay to its Insured or Reinsured on its net retained lines, an amount in excess of U.S. $150,000 of losses in the aggregate under each policy during each policy year, and the amount recoverable hereunder shall be the amount in excess of such U.S. $150,000 aggregate ultimate net loss sustained by the Reassured in respect of each policy during each policy year, but such amount recoverable shall not exceed a further U.S. $1,850,000 hereunder in the aggregate under each policy during each policy year.

The term 'policy year' shall mean each separate original policy period but not exceeding 12 months commencing at the inception anniversary or renewal date of such original policy.

80-60   7/1/77

JOHN F. SULLIVAN

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 101 of 107



L.N. 1A620

For the purpose of this Section (B), the date of loss in respect to the aggregate of all losses occurring during a policy year shall be considered the commencement date of such policy year. In the event of cancellation of this Contract, liability hereunder shall cease at the next normal anniversary date of the original policy.

An occupational or other disease suffered by an employee which disease arises out of the employment and for which the employer is liable shall be deemed an accident within the meaning hereof. In case the Reassured shall within a policy year sustain several losses arising out of such an occupational or other disease of one specific kind or class, suffered by several employees of one insured, such losses shall be deemed to arise out of one accident. A loss on respect each employee affected by the disease shall be deemed to have been sustained by the Reassured at the date when compensable disability of the employee commenced and at no other date.

It is warranted that the first $150,000 ultimate net loss in any occurrence and/or accident shall be retained by the Reassured at its own risk and unreinsured.

Except as provided above in respect of occupational disease it is especially agreed that for all purposes of this Contract the term "any one occurrence and/or accident" shall mean any one occurrence or accident or series of occurrences or accidents arising out of one event.

2.  Paragraph 2 of Article 4 shall read as follows:

In the event of a loss arising in which the Reinsurers hereon may be liable to contribute, no legal costs shall be incurred on their behalf without their consent being first obtained and if they so consent they shall contribute to the said costs in the proportion that their share of the loss, as finally settled, bears to the total sum payable. If, however, a settlement of the loss be practicable prior to taking the case into Court, whether by compromise or otherwise, for a sum not exceeding U.S. $150,000 no legal costs shall be payable by the Reinsurers hereon.

3.  Article 7 shall read as follows:

ARTICLE 7

In the event of any portion of the liability hereunder being exhausted by loss, the amount so exhausted shall be automatically reinstated from the time of occurrence of the loss without payment of additional premium but nevertheless the Reinsurers' liability shall never be more than U.S. $1,850,000 any one occurrence and/or accident, nor more than $1,850,000 in the aggregate any one contract year in respect of unknown nuclear exposure.

RD-46  7/17/3                    -5-

JOHN P. WOOLDRIDGE INC.



C No. 16620

4. Article 8 is deleted and replaced by the following:

## ARTICLE 8

The premium to be paid to the Reinsurers shall be 2.25% of the Reassured's entire gross net premium income (i.e. exclusive of membership fees and surplus deposits under retrospective policies) under Policies and Contracts of Insurance and/or Reinsurance, as previously defined herein, which shall accrue to the Reassured during the period of this Contract.

The term 'gross net premium income' in the foregoing paragraph shall be construed to mean the gross written premium of the Reassured after making proper deductions for all return premiums (other than earnings returned to policyholders on Direct Business), and cancellations and reinsurance premiums, if any, paid by the Reassured for reinsurances, recoveries under which shall inure to the benefit of these Reinsurers.

A deposit premium of U.S. $500,000 shall be paid to the Reinsurers on the 1st of July, 1971 and quarterly thereafter. As promptly as possible following the 30th June of each year, the Reassured shall furnish statements of its gross net premium income, as defined herein, and adjustments shall be made in accordance with the foregoing conditions. Should the amount so arrived at be more than the total of the four quarterly deposit premium payments of U.S. $500,000 each, the Reassured shall pay the difference to the Reinsurers.

Should, however, the total premium due Reinsurers in any one year be less than the total of the four quarterly deposit premium payments of U.S. $500,000 each, there shall be no refund to the Reassured, the said four quarterly deposit premium payments of U.S. $500,000 being deemed the minimum annual premium for this Contract.

In the event of this Contract being cancelled by the Reinsurers, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or pro rata of the above stated annual minimum premium whichever is the greater.

Should this Contract be cancelled by the Reassured, the premium for that portion of the last annual period this Contract was in force shall be calculated at 2.25% of the pro rata of the Reassured's gross net premium income during the contract year in which this Contract becomes cancelled, or short rate of the above stated annual minimum premium whichever is the greater.

Edward 7/1/73

-3-

JOHN P. SULLIVAN CO.

TREATY 076

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 103 of 107



C.R. 1463()

3. Reinsurers and their participations are as signed hereon and not as previously signed.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate, in London, England, this 2nd. day of October, 1973.

For and on behalf of the Reinsurers:

In witness whereof I, being a representative of the Leading Office which is duly authorised by the Reinsurers, have hereunto subscribed my name on their behalf.

DOMINION INSURANCE COMPANY, LIMITED

*for Assistant Manager*

DOMINION INSURANCE COMPANY, LIMITED                                    16.50%

PER H.S. WEAVERS (UNDERWRITING) AGENCIES LTD.                          3.90%

27.40%  Walbrook Insurance Company, Ltd.

          (50.00% National Casualty Company
27.40%  (12.50% Accident & Casualty Ins. Co. of Winterthur
          (12.50% Bermuda Fire & Marine Insurance Co., Ltd.
          (25.00% National Casualty Co. of America, Ltd.

17.90%  (77.00% London & Edinburgh General Ins. Co., Ltd.
          (23.00% Bishopsgate Insurance Company, Ltd.

27.40%  St. Katherine Insurance Company, Ltd.
100.00%

26.40%
part of 100.00%

BU-46  1/1/73                                -4-

JOHN E. SOUTHWORTH

TREATY 077

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 104 of 107

C.N. 14620

ADDENDUM NO. 7

to

CONTRACT OF REINSURANCE

issued to:

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reinsured')

by

VARIOUS UNDERWRITERS AT LLOYD'S, LONDON
(hereinafter called the 'Reinsurers')

It is hereby agreed that effective 1st July, 1973, Article 13, SERVICE OF SUIT CLAUSE, is replaced by the following:

### ARTICLE 12

SERVICE OF SUIT CLAUSE (U.S.A.) (Applies only to those Reinsurers who are domiciled outside the United States of America.)

In the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Exchange, will submit to the jurisdiction of any Court of competent jurisdiction within the United States and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Sedgwick, Detert, Moran & Arnold, 111 Pine Street, San Francisco, California 94111, and in any suit instituted against any one of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Exchange to give a written undertaking to the Exchange that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any State, Territory or District of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office.

80-46  9/1/73

JOHN F. SULLIVAN CO.

Case 1:26-cv-01709-LAK    Document 1-2    Filed 03/02/26    Page 105 of 107

O.H. 14620

as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Exchange or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorised to mail such process or a true copy thereof.

All other terms and conditions of this Contract remain unchanged.

SIGNED, in duplicate in London, England, this        24ᵗʰ        day of        September        , 1973.

Ʋor and on behalf of:

LLOYD'S, LONDON

54.50%
part of 100.00%



80-46   9/1/73                          -2-

JOHN F. SULLIVAN CO.

TREATY 079

ADDENDUM NO. 1

to

CONTRACT OF REINSURANCE

issued to

TRUCK INSURANCE EXCHANGE
Los Angeles, California
(hereinafter called the 'Reinsured')

by

CERTAIN INSURANCE COMPANIES
(each for its own part and not one for the other)
(hereinafter called the 'Reinsurers')

It is hereby agreed that effective 1st July, 1973, Article 12, SERVICE OF SUIT CLAUSE, is replaced by the following:

### ARTICLE 12

SERVICE OF SUIT CLAUSE (U.S.A.) (Applies only to those Reinsurers who are domiciled outside the United States of America.)

In the event of the failure of Reinsurers hereon to pay any amount claimed to be due hereunder, Reinsurers hereon, at the request of the Exchange, will submit to the jurisdiction of any Court of competent jurisdiction within the United States, and will comply with all requirements necessary to give such Court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such Court.

Service of process in such suit may be made upon Sedgwick, Decert, Moran & Arnold, 111 Pine Street, San Francisco, California 94111, and in any suit instituted against any one of them upon this Agreement, Reinsurers will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Reinsurers in any such suit and/or upon the request of the Exchange to give a written undertaking to the Exchange that they will enter a general appearance upon Reinsurers' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any State, Territory or District of the United States which makes provision therefor, Reinsurers hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office.

BU-46  9/1/73

JOHN F SULLIVAN Co

TREATY 080

Case 1:26-cv-01709-LAK   Document 1-2   Filed 03/02/26   Page 107 of 107

us their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Exchange or any beneficiary hereunder arising out of this Agreement, and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this Contract remain unchanged.

THIS ADDENDUM NO. 7 to the First Casualty Excess Reinsurance Agreement, is signed in duplicate, in London, England, this _____ day of _____, 1973.

For and on behalf of the Reinsurers:

In witness whereof I, being a representative of the Leading Office which is duly authorized by the Reinsurers, have hereunto subscribed my name on their behalf.

DOMINION INSURANCE COMPANY, LIMITED

DOMINION INSURANCE COMPANY, LIMITED

PER H.S. WEAVERS (UNDERWRITING) AGENCIES LTD.

— 27.40%  Walbrook Insurance Company, Ltd.

27.40%  (50.00% National Casualty Company
(12.50% Accident & Casualty Ins. Co. of Winterthur
(12.50% Bermuda Fire & Marine Insurance Co., Ltd.
(25.00% National Casualty Co. of America, Ltd.

17.80%  (77.00% London & Edinburgh General Ins. Co., Ltd.
(23.00% Bishopsgate Insurance Company, Ltd.

27.40%  St. Katherine Insurance Company, Ltd.

100.00%

26.40% part of 100.00%