UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TRUCK INSURANCE EXCHANGE,

                    Plaintiff,

              -against-

JONATHAN ROSEN,

                    Defendant,

              -and-

CERTAIN UNDERWRITERS AT LLOYD'S LONDON, *et al.*,

                    Intervenor Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

26-cv-1709 (LAK)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __07/17/2026__

## MEMORANDUM OPINION GRANTING
## MOTION TO DISMISS

                        Appearances:

John Albert Mattoon
FORD MARRIN ESPOSITO WHITMEYER & GLESER LLP
*Attorney for Plaintiff*

Jianjian Ye
Michael Barry Carlinsky
QUINN EMANUEL URQUHART & SULLIVAN LLP
*Attorneys for Defendant*

Michael P. Mullins
Nicholas Lombard
DAY PITNEY LLP
*Attorneys for Intervenor Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Decades ago, an American insurance company signed a reinsurance agreement with

a group of foreign insurers. That agreement contained an arbitration clause. In 2024, the reinsurers

initiated an arbitration to resolve a dispute concerning payments made by the American company

2

to cover the asbestos-related liabilities of an insured.  The foreign companies appointed Jonathan Rosen as their arbitrator, the Americans raised no objection, and the arbitration proceeded to fact discovery.

Earlier this year, however, the American company sued Rosen in New York state court, seeking an order disqualifying him from serving as an arbitrator on the ground that Rosen, an attorney, had represented the company in a related mater in 2003.  The foreign companies intervened as defendants in the state court and removed the case to this Court.  They and Rosen now move to dismiss the complaint for failure to state a claim.  The plaintiff opposes that motion and seeks a remand to state court based on an alleged lack of federal subject-matter jurisdiction.

For the reasons that follow, the motion to remand will be denied and the motion to dismiss will be granted.

### *Facts*

I.     *The Parties*

Plaintiff Truck Insurance Exchange ("Truck") is an inter-insurance exchange organized under the laws of, and based in, California.[1]  Defendant Jonathan Rosen is a New York-licensed attorney who lives in New York.[2]

In the 1970s, Truck signed a series of reinsurance contracts (the "Treaties" or a "Treaty") with London-based insurance companies (the "Reinsurers"), which promised to reimburse

---

[1]     Compl. (Dkt 21-1) ¶ 8

[2]     *Id.* ¶ 9.

3

Truck for certain payouts that Truck might make under its insurance policies.[3]  The Reinsurers are

Intervenor-Defendants.

The Treaties are subject to an arbitration clause,[4] which provides:

"As a condition precedent to any right of action hereunder, if any dispute shall arise between [Truck] and [Reinsurers] with reference to the interpretation of this Contract or the rights with respect to any transaction involved, the dispute shall be referred to two Arbitrators, one to be chosen by each party and such Arbitrators shall choose an Umpire before entering upon the reference and in the event of said Arbitrators not agreeing the decision of said Umpire shall be final and binding upon all parties.  The Arbitrators and the Umpire shall interpret this Contract as an honourable engagement and they shall make their award with a view to effecting the general purpose of this Contract in a reasonable manner, rather than in accordance with a literal interpretation of the language.  Said arbitration to take place in Los Angeles, California."[5]

## II.    *The Arbitration*

In May 2024, the Reinsurers demanded arbitration with Truck to resolve their

objections to reimbursing Truck for certain payments Truck had made, and was continuing to make,

to its policyholder, Kaiser Cement, for asbestos-related liabilities incurred by Kaiser.[6]

Shortly after the Reinsurers demanded arbitration, Truck filed a lawsuit in California

state court in the hope of obtaining a declaration that a 1984 memorandum of understanding between

---

[3]    *Id.* ¶¶ 13-14.

[4]    *Id.* ¶ 15.

[5]    Dkt 21-32 at 9 (Article 11); *see* Notice of Removal (Dkt 1) ¶ 3.

[6]    Compl. ¶¶ 23-26.

4

the parties did not justify the Reinsurers' refusal to pay the Kaiser billings.[7]   The Reinsurers

removed the action to the Central District of California and moved to compel arbitration.[8]   The court

granted the motion to compel and, upon stipulation of the parties, dismissed the action without

prejudice in an order that noted that "[t]he parties may file a motion to reopen this case should there

be any further need for judicial involvement concerning the arbitration."[9]

      The Reinsurers appointed Rosen as their party-appointed arbitrator.[10]   The two party-

appointed arbitrators are paid by the parties that appointed them.[11]   The "umpire" is paid by both

sides equally.[12]   The complaint further alleges that the party-appointed arbitrators "are expected to

be advocates for the respective parties that appointed them" and may communicate *ex parte* with

that party.[13]

      In May 2025, the parties executed an agreement (the "Hold Harmless Agreement")

in which all sides stipulated that the arbitrators and umpire had disclosed all potential conflicts of

interest and that "based on those disclosures . . . no member of the Panel has any conflict of interest

---

[7]    *See generally Truck Ins. Exchange v. Certain Underwriters at Lloyd's London*, No. 24-cv-8157, 2024 WL 5439268 (C.D. Cal. 2024).

[8]    *Id.* at *2.

[9]    Dkt 21-54. After Truck filed the instant complaint, the Reinsurers moved to reopen the California action, but their request was denied.  Dkt 49.

[10]    Compl. ¶ 29.

[11]    *Id.* ¶ 27.

[12]    *Id.*

[13]    *Id.* ¶ 28; *see id.* ¶¶ 34-35, 42.

that would make him or her unfit to serve in this arbitration."[14]  Truck and the Reinsurers then each

agreed "not [to] assert any claim, file any suit, or initiate any action against the Panel or any member

thereof in connection with their rendering of services as arbitrator and/or umpire in this arbitration

proceeding (including, but not limited to, any claim, suit, or action relating to any alleged conflict,

bias, or lack of disinterestedness)."[15]

## III.    The Complaint

In late 2025, Truck discovered records in its own possession demonstrating that

Rosen had served as its attorney in 2003 in connection with a dispute with the same Reinsurers

concerning the same Treaties at issue in the present  arbitration.[16]  During the course of that

representation, which concerned payments Truck had made to policyholders Temco and Ameron,

Truck allegedly "disclosed to Rosen its confidential interpretation of the Treaties, including Truck's

view of the strengths and weaknesses of its position vis-a-vis the Reinsurers."[17]  Rosen advised

Truck on those issues and "undertook extensive negotiations with the Reinsurers," including

traveling to London for face-to-face negotiations, and writing several letters in which he identified

---

[14]    Dkt 21-42 at 2.

[15]    *Id.* at 3.

[16]    Compl. ¶ 33.

[17]    *Id.* ¶ 18.

6

himself as Truck's counsel.[18]  By the end of 2003, Rosen had negotiated settlements of the Temco and Ameron matters.[19]

On January 8, 2026, Truck wrote to Rosen to demand that he resign from the panel and cease *ex parte* communications with the Reinsurers' counsel concerning topics on which Truck previously had shared confidential and privileged information.[20]  Rosen  refused to resign, denied that he retained any confidential information belonging to Truck, and declined to cease communicating *ex parte* with Reinsurers' counsel.[21]

On January 26, 2026, Truck sued Rosen in the Supreme Court of the State of New York in New York County.  On February 6, 2026, with the consent of Rosen and Truck, the state court allowed the Reinsurers to intervene as defendants.[22]

The complaint pleads three counts, all allegedly arising under state law.

In Count One, Truck alleges that Rosen is breaching a fiduciary duty to Truck by serving as an arbitrator, citing Rules 1.9(a) and 1.9(c) of the New York Rules of Professional Conduct.[23]  Truck does not allege that Rosen has disclosed to the Reinsurers any confidential information obtained during his representation of Truck.  Rather, Truck alleges that "Rosen's

---

[18]    *Id.* ¶¶ 19-20.

[19]    *Id.* ¶ 21.

[20]    *Id.* ¶ 34.

[21]    *Id.* ¶ 35.

[22]    Dkt 1-1.

[23]    Compl. ¶¶ 36-43.

continued presence on the arbitration panel will irreparably harm Truck" by causing Truck to "face ongoing risks that its confidential information will be used against it."[24]

In Count Two, Truck seeks declaratory relief disqualifying Rosen from acting as an arbitrator.[25] It alleges that Rosen is in breach of his duty as an attorney "not to undermine the administration of justice or the integrity of the arbitration process" because Truck might call Rosen as a fact witness in the arbitration.[26]

In Count Three, Truck seeks to enjoin Rosen from continuing to serve as an arbitrator in the arbitration for the reasons stated in the first two counts.[27]

## IV.    Removal

On March 2, 2026, the Reinsurers filed a notice of removal in this Court with the consent of Rosen.[28] They there allege that the prosecution of Truck's lawsuit could affect the arbitration because it could cause the Reinsurers to "lose their contractual right to proceed in the Arbitration with their duly-appointed arbitrator."[29] They allege further that the mere pendency of

---

[24]    *Id.* ¶ 43.

[25]    *Id.* ¶¶ 44-48.

[26]    *Id.* ¶¶ 46-48.

[27]    *Id.* ¶¶ 49-51.

[28]    Dkt 1.

[29]    Notice of Removal ¶ 40.

8

the action could delay the arbitration, which at the time of removal was scheduled for a final hearing in October 2026.[30]

Truck subsequently moved to remand the case for lack of subject matter jurisdiction. Rosen and the Reinsurers have moved to dismiss the complaint for failure to state a claim. The Court heard oral argument on the pending motions on May 14, 2026.

### *Discussion*

I.      *Motion to Remand*

Truck moves to remand the case on the ground that the Court lacks subject-matter jurisdiction.[31] The Reinsurers bear the burden of demonstrating that jurisdiction is proper.[32]

A.      *Legal Background*

1.      *New York Convention*

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention" or "Convention") is a multilateral treaty to which the United States acceded in 1970.[33] The Convention applies to the recognition and enforcement of international

---

[30]    *Id.*

[31]    *See* 28 U.S.C. § 1447(c).

[32]    *See United Food & Com. Workers Union, Loc. 919 v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994).

[33]    Convention on the Recognition and Enforcement of Foreign Arbitration Awards, June 10, 1958, 21 U.S.T. 2517 [hereinafter "New York Convention"]; *see GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 590 U.S. 432, 438-39 (2020).

arbitration agreements and arbitral awards.[34]    Congress enacted implementing legislation as Chapter 2 of the Federal Arbitration Act ("FAA").[35]

An arbitration agreement or arbitral award "arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless [1] the relationship is "entirely between citizens of the United States" *and* [2] [a] does not involve property abroad, [b] does not envisage performance or enforcement abroad, and [c] has no other reasonable relation with one or more foreign states.[36] Thus, arbitration agreements in commercial contracts involving foreign signatories fall under the Convention.[37]

### 2.    FAA Section 203

Under Section 203 of the FAA, "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States," and the district courts of the United States "shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."[38]   The Convention expressly authorizes two types of actions.   It provides that each signatory "shall, at the request of one of the parties [to a

---

[34] *See GE Energy*, 590 U.S. at 438-39.

[35] 9 U.S.C. §§ 201-208; *see Molecular Dynamics, Ltd. v. Spectrum Dynamics Med. Ltd.*, 143 F.4th 70, 86 (2d Cir. 2025).

[36] 9 U.S.C. § 202.

[37] *See, e.g.*, *Scandinavian Reinsurance Co. v. Saint Paul Fire & Marine Ins. Co.*, 668 F.3d 60, 71 (2d Cir. 2012).

[38] 9 U.S.C. § 203.

covered arbitration agreement], refer the parties to arbitration" unless a ground exists for invalidating the agreement.[39] And it sets out certain procedures applicable to the "recognition and enforcement" of arbitral awards covered by the treaty.[40]  So actions or proceedings to compel arbitration and enforce an arbitral award clearly "fall[] under the Convention."[41]

But the Second Circuit has read Section 203 to apply also to "*necessary* ancillary proceedings that ensure the proper functioning of the underlying arbitration."[42]  Under that precedent, "proceedings that are consistent with the Convention's 'provisions and its spirit' of ensuring enforcement of international commercial arbitration agreements also fall under the Convention."[43]  Some examples: enforcing a summons to compel a witness to appear at an arbitration hearing,[44] issuing a writ of attachment to ensure the availability of assets to satisfy a

---

[39] New York Convention art. II(3).

[40] *Id.* arts. III-VI.

[41] 9 U.S.C. § 203; *see id.* §§ 206 (authorizing courts to compel arbitration and appoint arbitrators in accordance with the parties' agreement), 207 (authorizing courts to confirm arbitral awards).

[42] *Molecular Dynamics*, 143 F.4th at 87 (emphasis in original) (quoting *Jones Day v. Orrick, Herrington & Sutcliffe, LLP*, 42 F.4th 1131, 1139 (9th Cir. 2022)); *see also Republic of Ecuador v. Chevron Corp.*, 638 F.3d 384, 391 n.6 (2d Cir. 2011).

[43] *Molecular Dynamics*, 143 F.4th at 87 (quoting *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 826 (2d Cir. 1990)).

[44] *Jones Day*, 42 F.4th at 1134, 1139, *cited in Molecular Dynamics*, 143 F.4th at 87.

11

potential arbitral award,[45] and issuing a preliminary injunction during the pendency of an arbitration.[46]

### 3.    FAA Section 205

Under Section 205, "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention," a defendant "may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending."[47]  In such cases, the normal procedures for removal apply, "except that the ground for removal . . . need not appear on the face of the complaint but may be shown in the petition for removal."[48]  The last-quoted phrase abrogates in this context the "well-pleaded complaint" rule,[49] thereby allowing the "federal interest in the matter . . . [to] be stated in the removal petition itself."[50]

Under the plain text of this provision, the propriety of removal under Section 205 turns on whether the subject matter of a proceeding in state court "relates to" an arbitration

---

[45] *Stemcor USA Inc. v. CIA Siderurgica do Para Cosipar*, 927 F.3d 906, 910-11 (5th Cir. 2019), *cited in Molecular Dynamics*, 143 F.4th at 87.

[46] *Borden*, 919 F.2d at 825-26.

[47] 9 U.S.C. § 205.

[48] *Id.*

[49] *See Beiser v. Weyler*, 284 F.3d 665, 671 (5th Cir. 2002).

[50] *Poss v. Lieberman*, 299 F.2d 358, 359 (2d Cir. 1962).

12

agreement or award falling under the Convention.[51]  The Second Circuit has not had occasion to interpret that language.  In analogous contexts, however, the Supreme Court has noted that the phrase "relating to" "sweeps broadly."[52]  It means "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with."[53] One thing can relate to another indirectly, and a "strict causal relationship" need not be shown.[54]  But to fall within the ordinary meaning of "relating to," a relationship must be more than "tenuous, remote, or peripheral."[55]

Other circuits have interpreted Section 205 to apply "whenever an arbitration agreement falling under the Convention could *conceivably* affect the outcome of the plaintiff's case."[56]  Because Section 205 expressly abrogates in this context the "well-pleaded complaint" rule by allowing the basis for removal to "be shown in the petition for removal,"[57] some of those courts

[51] 9 U.S.C. § 205.

[52] *Chevron USA Inc. v. Plaquemines Parish*, 146 S. Ct. 1052, 1060 (2026).

[53] *Id.* (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992)).

[54] *Id.* (quoting *Ford Motor Co. v. Montana Eighth Judicial Dist. Ct.*, 592 U.S. 351, 362 (2021)).

[55] *Id.* at 1061 (quoting *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 94 (2020) (Thomas, J., concurring)).

[56] *Beiser*, 284 F.3d at 669; *see Infuturia Glob. Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011); *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012).

[57] 9 U.S.C. § 205.

have reasoned that removal jurisdiction exists "over just about any suit in which a defendant contends that an arbitration clause falling under the Convention provides a defense."[58]

District courts in this circuit likewise have interpreted the removal provision broadly. In *York Hannover Holding A.G. v. American Arbitration Ass'n*,[59] for example, the court concluded that the subject matter of an action to remove an arbitral panel in a pending arbitration related to an arbitration agreement that"provide[d] for the manner in which the arbitrators are appointed."[60]

### B.    Analysis

#### 1.    Jurisdiction Under Section 203

It is undisputed, and otherwise clear from the record, that Truck and the Reinsurers are parties to an arbitration agreement that falls under the Convention.  That arbitration is ongoing. If Truck had failed to proceed with the arbitration in accordance with the terms of the parties' agreement, the Reinsurers could have compelled Truck to do so under the authority provided by Article II(3) of the Convention, as codified in FAA Section 206.

This action effectively is an attempt by Truck to undo the arbitration agreement to which it previously agreed – an agreement that gave no assurances, *to either side*, concerning the "risks" that might be created by an opposing party's choice of arbitrator.[61]  And its prosecution threatens to delay or otherwise interfere with the arbitration mandated by that agreement.  The

---

[58]    *Beiser*, 284 F.3d at 669; *see Infuturia Glob.*, 631 F.3d at 1138.

[59]    794 F. Supp. 118 (S.D.N.Y. 1992).

[60]    *Id.* at 122.

[61]    Compl. ¶ 43.

defense of the action therefore will determine whether the arbitrators appointed pursuant to the procedure outlined in the parties's arbitration agreement will be allowed to decide the dispute and how quickly.

In these circumstances, this dispute is so closely related to an action expressly authorized by the Convention – a proceeding to enforce an arbitration clause and compel arbitration – that it constitutes a necessary ancillary proceeding that itself "fall[s] under the Convention" within the meaning of Section 203. Because this case was removed pursuant to Section 205, the Court considers not only Truck's claims but also the Reinsurers' defenses.[62] As the Reinsurers allege in the notice of removal, "if Truck is successful, Reinsurers will lose their contractual right to proceed in the Arbitration with their duly-appointed arbitrator."[63] Vindicating the Resinsurers' defense of this action thus effectively would compel the parties to continue arbitrating so that their dispute may be decided by the arbitrators appointed in accordance with the provisions of their agreement.[64] It is clear, therefore, that adjudication of this dispute, as it is framed in the notice of removal, will "ensure the proper functioning of the underlying arbitration" and further "the Convention's 'provisions and its spirit' of ensuring enforcement of international commercial arbitration agreements."[65]

---

[62] *Cf. Poss*, 299 F.2d at 359 ("The removal is based on a federal interest in the matter, the facts underlying which may be stated in the removal petition itself, whether or not federal jurisdiction existed over the claim as stated in the complaint as originally served.").

[63] Notice of Removal ¶ 40.

[64] *Cf.* 9 U.S.C. § 206.

[65] *Molecular Dynamics*,143 F.4th at 87 (first quoting *Jones Day*, 42 F.4th at 1139; and then quoting *Borden*, 919 F.2d at 826).

15

Truck's counter-arguments are easily dispensed with.  It argues that its relationship *with Rosen* is not "commercial" and that its dispute *with Rosen* is not "capable of settlement by arbitration."[66]  Both contentions, however, are immaterial.  Truck's arbitration agreement *with the Reinsurers* falls under the Convention, and the action's relationship to that agreement is what brings this proceeding within the jurisdiction of the federal courts.

### 2.    *Removal Under Section 205*

Removal of this action was authorized by Section 205.[67]  As in *York Hannover*, the method for the appointment of arbitrators set out in the parties' arbitration contract "forms an integral part of the arbitration agreement."[68]  Yet Truck "seeks by its action to reverse" the parties' implementation of that process and "expel from office [a] presently appointed arbitrator[]."[69]  In the circumstances, "[i]t cannot be reasonably argued that the action does not 'relate' to the parties' arbitration agreement."[70]

---

[66]

Mem. of Law in Support of Mot. to Remand (Dkt 28) at 8 (quoting 9 U.S.C. § 202).

[67]

Truck did not raise any procedural objections to removal in his motion to remand, so any such challenges are waived.  *See Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 50 n.2 (2d Cir. 2000).

[68]

794 F. Supp. at 122.

[69]

*Id.*

[70]

*Id.*

Furthermore, contrary to Truck's assertion that the arbitration agreement "is completely irrelevant here" and "not rel[ied] upon . . . for *anything*,"[71] the notice of removal asserts that Truck's claims conflict with their "contractual right to proceed in the Arbitration with their duly-appointed arbitrator."[72] The notice thereby tees up a colorable defense rooted in the arbitration clause, i.e., that the Reinsurers' right to arbitrate in accordance with the agreement forecloses the relief Truck seeks. The Notice of Removal alleges also that, during the course of the arbitration undertaken pursuant to the agreement, the parties entered into a contract that bars Truck's action.[73] That is more than sufficient to bring this case within the capacious terms of Section 205.

Some courts seemingly have held that Section 205 independently confers subject-matter jurisdiction on the federal courts.[74] Other courts have disagreed,[75] reasoning that "a federal district court must have both removal jurisdiction and subject matter jurisdiction in order to preside over a case removed from state court."[76] It is true, of course, that whether the removal of a case is authorized by statute is a question separate from whether the case falls within the subject matter

---

[71] Reply Mem. of Law in Support of Mot. to Remand (Dkt 43) at 5 n.3.

[72] Notice of Removal ¶ 40.

[73] *Id.* ¶¶ 16-17.

[74] *See Reid*, 701 F.3d at 843-44 (resolving "object[ion] to subject matter jurisdiction" by holding that the case "was properly removed under § 205").

[75] *See, e.g.*, *Albaniabeg Ambient Sh.p.k. v. Enel S.p.A.*, 169 F. Supp. 3d 523, 527-28 (S.D.N.Y. 2016).

[76] *Holzer v. Mondadori*, No. 12-cv-5234 (NRB), 2013 WL 1104269, at *6 (S.D.N.Y. Mar. 14, 2013); *see also CollegeStreet Import & Export (Tinajin) Co. v. Loyalist, LLC*, 824 F. Supp. 3d 432, 441 (S.D.N.Y. 2026) ("It is not enough, however, for the FAA to confer removal jurisdiction. The Court must also have subject matter jurisdiction to hear the parties' dispute.").

jurisdiction of the federal courts.  But it is true also that "[a] removal statute *may*, . . . in limited circumstances, confer subject matter jurisdiction on the federal courts, as well as provide the procedural mechanism for removal."[77]  There is good reason to conclude that Section 205 is such a statute.[78]  Whereas the general removal statute limits its reach to cases "of which the district courts of the United States have original jurisdiction,"[79] Section 205 makes no textual reference to the need for a case removed under its authority to come within the jurisdiction provided by any other provision of law.[80]   In that sense, Section 205 is materially similar to Judicial Code Section 1442(a)(1),[81] which "confers jurisdiction as well as the right of removal."[82]  Because Section 203 provides jurisdiction over this case, however, the Court need not decide whether Section 205 confers jurisdiction in its own right.

---

[77] *Orange Cnty. Water Dist. v. Unocal Corp.*, 584 F.3d 43, 50 (2d Cir. 2009).

[78] *Scandinavian Reinsurance*'s statement that "[t]he FAA does not 'independently confer subject matter jurisdiction on the federal courts" is not to the contrary.  668 F.3d at 71 (quoting *Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009)).  The quoted remark was nothing more than a restatement of the proposition that "FAA-created arbitration actions," such as motions to compel arbitration or to confirm or vacate an arbitration award, "do not themselves support federal jurisdiction." *Badgerow v. Walters*, 596 U.S. 1, 8 (2022).  In the same paragraph, the court recognized that 9 U.S.C. § 203 provided jurisdiction over the action at hand.  It had no occasion to discuss Section 205.

[79] 28 U.S.C. § 1441(a).

[80] *Cf.* 9 U.S.C. § 204 (referring to "[a]n action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title").

[81] 28 U.S.C. § 1442(a)(1).

[82] *Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany, N.A.*, 791 F.2d 242, 244 (2d Cir. 1986).

*3.*    Burford *Abstention*

In *Burford v. Sun Oil Co.*,[83] the Supreme Court recognized an "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it."[84] A court may abstain from deciding a case under *Burford* if its adjudication in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern," or if the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."[85]    Truck argues that its complaint "implicate[s] important public policy considerations involving fiduciary duties that attorneys licensed in [New York] owe to former clients."[86]

Substantially for the reasons stated by the Reinsurers, however, this action does not resemble those in which courts have exercised their discretion to abstain under *Burford*.  This is an isolated dispute between a handful of private parties.  It is not, as Truck contends, analogous to an action brought by the New York State Superintendent of Insurance pursuant to a comprehensive regulatory scheme governing insolvent insurance companies.[87]  Truck identifies no "state efforts to establish a coherent policy with respect to a matter of substantial public concern" aside from the

---

[83]    319 U.S. 315 (1943).

[84]    *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 728 (1996) (*quoting Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976)).

[85]    *Id.* at 726-27 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989)).

[86]    Reply Mem. of Law in Support of Mot. to Remand at 10.

[87]    *See* Mem. of Law in Support of Mot. to Remand (discussing *Corcoran v. Ardra Ins. Co., Ltd.*, 657 F. Supp. 1223 (S.D.N.Y. 1987)).

mere fact that the complaint raises questions of state law.  That is not enough.[88]  Considering all the relevant circumstances advanced by the parties,[89] the Court declines to exercise its discretion to abstain.

## II.    Motion to Dismiss

As noted above, the defendants assert a colorable defense rooted in federal law – namely, that the FAA bars the relief Trucks seeks.  Ultimately, however, the Court need not reach the issue of the validity of that contention because it is clear that Truck's claims must be dismissed on a different ground.

### A.    Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the facts alleged in the complaint, construed in the light most favorable to the plaintiff, must "state a claim to relief that is plausible on its face."[90]  In adjudicating a motion to dismiss, "a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial

---

[88]  *See Meredith v. City of Winter Haven*, 320 U.S. 228, 234-35 (1943); *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986).

[89]  The Court considers the absence of a state administrative proceeding or order as merely one factor to consider.  Resolving the Reinsurers' contention that *Burford* abstention is improper, categorically, in the absence of such a proceeding or order, is unnecessary.

[90]  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

20

notice may be taken.'"[91]  A court may dismiss a complaint based on an affirmative defense it if its clear on the Rule 12(b)(6) record that the plaintiff's claims fail as a matter of law.[92]

Courts in this district have taken judicial notice of settlement agreements and releases involving the parties in order to resolve cases at the pleading stage.[93]  The Reinsurers invite the Court to consider the Hold Harmless Agreement on this theory, and Truck offers no specific objection.  Even if Truck had done so, it would have been to no avail.  The copy of the Hold Harmless Agreement "concededly is authentic" and "[i]ts wording (as distinguished from its legal effect) is undisputed."[94]  The Court takes judicial notice of it.[95]

### B.    Analysis

In the Hold Harmless Agreement, "[e]ach party" – meaning Truck and the Reinsurers – agreed not to "assert any claim, file any suit, or initiate any action against the [arbitral] Panel or any member thereof in connection with their rendering of services as arbitrator . . . in this arbitration

---

[91]

*Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

[92]

*See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998); *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992).

[93]

*See, e.g.*, *Bensky v. Indyke*, 743 F. Supp. 3d 586, 592-93 (S.D.N.Y. 2024); *Johnson v. City of New York*, No. 21-cv-10535 (VSB), 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023).

[94]

*Giuffre v. Andrew*, 579 F. Supp. 3d 429, 438 (S.D.N.Y. 2022).

[95]

The parties' briefs appear to assume that New York law governs interpretation of the agreement, which is "sufficient to establish the applicable choice of law."  *Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 514 n.4 (2d Cir. 2001).

21

proceeding."[96]   The barred claims expressly include, but are not limited to, any that raise "any alleged conflict, bias, or lack of disinterestedness."[97]   The parties agreed also to indemnify the arbitrators against any litigation fees and expenses incurred in connection with any action "arising or resulting from or out of this arbitration."[98]   They added that the agreement was "non-cancelable and of unlimited duration."[99]   Nothing in the agreement, however, limits the ability of either party to seek to vacate or modify any arbitral award, except on the basis of a conflict of interest that was fully disclosed prior to the execution of the agreement.[100]

Truck's claim obviously is an "action against" Rosen "in connection with" his services as an arbitrator.  The entire premise of the lawsuit is that Rosen is breaching a fiduciary duty by serving as a party-appointed arbitrator.  Based on the plain text of the Hold Harmless Agreement, Truck's complaint is an action that Truck promised not to bring.  Given that Truck is seeking equitable relief that threatens to interfere with or otherwise irreversibly alter the course of an ongoing arbitration, and given that the Reinsurers specifically contracted to avoid this situation, the only appropriate remedy is dismissal.

Truck resists this obvious conclusion on essentially four grounds, none of which persuades.

---

[96]   Dkt 21-42 at 2.

[97]   *Id.*

[98]   *Id.*

[99]   *Id.*

[100]   *Id.*

22

First, Truck argues that the agreement is ambiguous.[101] This contention is based entirely on recitals that appear as "whereas" clauses ahead of the operative clause in which the promise not to sue appears. Those recitals state that the arbitrators had disclosed conflicts "to the best of their recollection" and that "based on those disclosures," the parties had agreed that the arbitrators were fit to serve.[102] In light of those recitals, Truck contends that the agreement reasonably could be read *not* to bar a lawsuit related to a conflict that an arbitrator failed to disclose. But that reading of the agreement would be unreasonableand impermissable.

It is well established that although "a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract, 'it cannot create any right beyond those arising from the operative terms of the document.'"[103] Even putting that principle aside, Truck's proffered interpretation would be implausible. The operative clause unambiguously bars "*any* claim," "*any* suit," or "*any* action" in connection with an arbitrator's "rendering of services as an arbitrator," including an action related to "*any* alleged conflict."[104] No exception is provided for suits based on conflicts that the arbitrators did not disclose. Notably, a savings clause preserves each party's right to seek to vacate or modify any arbitral award issued by the arbitrators, "except in regard to

---

[101]   Br. in Opp'n to Mot. to Dismiss (Dkt 30) at 13.

[102]   *Id.* at 1-2.

[103]   *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985) (quoting *Genovese Drug Stores v. Conn. Packing Co.*, 732 F.2d 286, 291 (2d Cir. 1984)).

[104]   Dkt 21-42 at 2 (emphases added).

any conflicts of interest *that have been fully disclosed to the parties*."[105]  The decision to omit similar language in the claim-barring clause of the agreement clearly was deliberate.

Reading each clause of the contract together, it is clear that the recitals do nothing more than state the facts that led the parties to enter into the agreement.  The parties determined that the arbitrators had made good-faith disclosures and that, based on those disclosures, the panel was qualified.  The parties then each agreed to forgo any future action against the arbitrators *for any reason*, in consideration for a reciprocal promise from the other side.  Truck brought this lawsuit in bald-faced defiance of that promise – a promise that clearly involved a knowing assumption of risk by Truck, presumably undertaken on the belief that any such risk was outweighed by the benefits otherwise conferred by the agreement.

Second, Truck argues that the agreement "may not be effective as to Rosen based on either mutual or unilateral mistake" on the theory that one or both parties were unaware that Rosen had previously served as Truck's attorney.[106]  The facts alleged in the complaint foreclose this argument.  According to the complaint, Truck, through its employees, was aware, actually or constructively, that it had hired Rosen to serve as the company's counsel in 2003.  Indeed, the records confirming Rosen's prior employment were found within Truck's own files.[107]  Truck, as a corporate entity, knew that Rosen had served as its attorney as a matter of law on those facts.[108]

---

[105]

*Id.* (emphasis added).

[106]

Br. in Opp'n to Mot. to Dismiss at 11.

[107]

Compl. ¶¶ 17-21, 33.

[108]

*See N.Y. Univ. v. First Fin. Ins. Co.*, 322 F.3d 750, 753 n.2 (2d Cir. 2003); *State v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 669 (S.D.N.Y. 2017); *United States v. Ladish Malting Co.*, 135 F. 3d 484, 492 (7th Cir. 1998); *Acme Precision Prods., Inc. v. Am. Alloys*

24

There was no mistake.  Nor could Truck justifiably have relied on any allegedly fraudulent concealment by Rosen.

Third, Truck argues that any waiver of claims contained in the agreement is ineffective because it was not the product of "informed consent" as defined in the New York Rules of Professional Conduct.[109]  Whether Rosen complied with ethical obligations imposed on him as an attorney is a question entirely distinct from whether, as a matter of contract law and equity jurisprudence, Truck is barred from suing Rosen.  Truck cites no authority to the contrary.  Moreover, Truck promised *the Reinsurers* that it would not sue Rosen, and it does not argue or allege that the New York Rules of Professional Conduct apply to the Reinsurers.

Finally, Truck invokes a highly technical distinction between the legal effects of "releases" and "covenants not to sue."[110]  Under New York law, a release is a "retrospective" extinguishment of a claim that leaves the releasing party with no cause of action to allege, while a covenant not to sue is a "prospective" promise not to enforce a claim that does not extinguish any cause of action.[111]  Truck contends, without opposition, that the Hold Harmless Agreement is a covenant not to sue under that framework.  On that premise, Truck complains that defendants identify no cases in which a complaint was dismissed at the pleading stage based on a covenant not

---

*Corp.*, 422 F.2d 1395, 1398 (8th Cir. 1970); *see also Mechanics' Bank of Alexandria v. Seton*, 26 U.S. (1 Pet.) 299, 309 (1828) (explaining that "[n]otice to the Board of Directors" of a bank was "notice to the bank" and "no subsequent change of Directors, could require a new notice of this fact").

[109]

Br. in Opp'n to Mot. to Dismiss at 11.

[110]

*Id.* at 14-15.

[111]

*Colton v. N.Y. Hosp.*, 98 Misc. 2d 957, 963, 965 (N.Y. Sup. Ct. 1979).

to sue, and it further argues that under New York law a covenant not to sue does not bar suit but merely exposes a plaintiff to a possible claim for damages.[112]

To be sure, the "early common law" rule was that breach of a covenant not to sue gave rise to a damages claim but provided "no defense to a suit brought in breach of the covenant."[113] But the "obvious inefficiency" of this approach "led the courts of equity to enjoin suits prohibited by a covenant not to sue, and the law courts eventually came to allow the covenant to be pleaded as a bar."[114] Thus, it is clear that a covenant not to sue can "operate as a release," in the sense of barring a complaint.[115] In *Artvale, Inc. v. Rugby Fabrics Corp.*,[116] for example, the Second Circuit affirmed the dismissal of a patent-infringement suit on the basis of a covenant not to sue.[117] Truck seeks to distinguish that case on the ground that the dismissal there occurred "only *after* trial."[118] But that was only because determining whether the covenant applied to the plaintiff's suit required the resolution of material factual disputes. Here, the agreement unambiguously covers Trucks' lawsuit. Aside from arguing that a covenant not to sue never bars a claim, Truck offers no

---

[112] Br. In Opp'n to Mot. to Dismiss at 14-15.

[113] *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 586 F. Supp. 1286, 1287 (S.D.N.Y. 1984).

[114] *Id.*

[115] *N.Y. State Elec. & Gas Corp. v. FirstEnergy Corp.*, 766 F.3d 212, 221 (2d Cir. 2014) (quoting *Shaw v. Crissey*, 182 Misc. 27, 28 (N.Y. Sup. Ct. 1943)).

[116] 363 F.2d 1002 (2d Cir. 1966).

[117] *See id.* at 1004, 1008.

[118] *See* Br. in Opp'n to Mot. to Dismiss at 15 n.6.

26

reason, beyond those already rejected above, that the Court should not treat the agreement as a bar to suit here.  On the facts, dismissal is the appropriate remedy as a matter of law.

## III.    *Leave to Amend*

The Reinsurers argue that any attempt by Truck to amend the complaint to avoid the effects of the Hold Harmless Agreement would be futile.[119]  Truck does not respond to this argument, other than summarily to assert in a footnote that any "dismissal should be without prejudice to permit Truck to re-plead as appropriate."[120]  An "opportunity to replead is rightfully denied" where "the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal."[121]  Truck cannot plead around the Hold Harmless Agreement for the reasons already stated, so the complaint will be dismissed with prejudice.

---

[119]    Mem. of Law in Support of Mot. to Dismiss at 24-25.

[120]    Br. in Opp'n to Mot. to Dismiss at 26 n.14.

[121]    *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

## Conclusion

For the foregoing reasons, the motion to remand (Dkt 27) is DENIED and the motion to dismiss with prejudice (Dkt 17) is GRANTED.  The Clerk respectfully is directed to enter final judgment and close the case.

SO ORDERED.

Dated:        July 17, 2026

_____

Lewis A. Kaplan
United States District Judge